REMINGTON INVESTMENTS, INC. *v.* NATIONAL
PROPERTIES, INC.
(AC 16552)

O'Connell, C. J., and Landau and Schaller, Js.

Argued February 24—officially released August 18, 1998

*Bernard Green*, with whom was *Marni Smith Katz*, for the appellant (defendant).

*Robert M. Barrack*, with whom, on the brief, was *John B. Farley*, for the appellee (plaintiff).

SCHALLER, J. The defendant, National Properties, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff as to all claims raised in the complaint. On appeal, the defendant claims that the trial court improperly (1) quieted title to the personal property at issue in favor of the plaintiff, (2) admitted into evidence an escrow agreement that provided for the holding of the funds realized from the sale of the personal property, (3) ordered relief not sought by the plaintiff and (4) allowed the plaintiff to amend its complaint. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant conducted business in Connecticut as a corporation involved in real estate development and property management from approximately 1982 to 1994. Peter Penczer, as the secretary and treasurer, Martin Ryan, Jr., as the president, and John Jarvis, Jr., and Robert Rowan, as vice presidents, were all shareholders and directors of the defendant corporation. The defendant acted as the record keeper and property manager for six commercial properties in Wallingford. Each parcel was owned by a separate general partnership that consisted of the principals of the defendant, which were designated as Fairfield Associates and Fairfield Associates II through VI.

One of the properties managed by the defendant was known as 6 Fairfield Boulevard. This property was originally purchased by Fairfield Associates, subject to a mortgage from Bank Mart in 1986.[1] Fairfield Associates later conveyed 6 Fairfield Boulevard to Fairfield Associates III, subject to Bank Mart's mortgage. The other

---

[1] As will be explained further, the plaintiff, Remington Investments, Inc., is the successor in interest to Bank Mart and the owner of all rights and claims of Bank Mart in connection with this lawsuit and the personal property at issue.

Fairfield Associates partnerships owned parcels or buildings that were either contiguous to or located near the building owned by Fairfield Associates III.

Among the tenants of Fairfield Associates III at 6 Fairfield Boulevard was Corporate Physique Training Center, Inc. (Corporate Physique), a health club. In 1989, Corporate Physique was delinquent in its rent and common area maintenance payments. On October 13, 1989, Fairfield Associates III and Corporate Physique entered into an agreement, titled, "Lease Termination Agreement." The agreement provided in relevant part that Corporate Physique would turn over possession of the premises to Fairfield Associates III and, in addition, transfer "all of its right, title and interest in all of the personal property belonging to the Tenant and located in the Premises . . . ." In consideration for this transfer, Fairfield Associates III agreed to release Corporate Physique from all of its obligations under the lease, including its past due and future rental and common area maintenance payments and, in addition, agreed to pay to Corporate Physique the sum of $15,000. Attached to the lease termination agreement was a "Bill of Sale" that acknowledged the conveyance by Corporate Physique to Fairfield Associates III of all of Corporate Physique's "assets of every kind and description located on the Premises at 6 Fairfield Boulevard . . . including without limitation those assets on exhibit A hereto . . . ." The bill of sale was signed by the secretary and the president of Corporate Physique, and by Ryan for Fairfield Associates III.[2] When placed in evidence as the plaintiff's exhibit F, however, neither the lease termination agreement nor the bill of sale had attached an exhibit A or any other enumeration of the personal property.

---

[2] Ryan's position as the president, director and shareholder of the defendant has already been noted.

Penczer, however, identified a list of exercise equipment under the title, "Corporate Physique Training Center Equipment List," dated October 9, 1989. This document was admitted into evidence as plaintiff's exhibit H and represented a list of all the exercise equipment purchased from Corporate Physique by Fairfield Associates III.

A photocopy of the front of a check of Fairfield Associates V dated October 13, 1989, for $15,000 payable to Corporate Physique, with a notation thereon that it was "per Lease Termination Agreement," was admitted as defendant's exhibit two. The check was signed by Ryan, president of the defendant and general partner in all of the entities owned by the six general partnerships.

No documentation was introduced into evidence of any transfers between Fairfield Associates III and Fairfield Associates V or from Fairfield Associates V to the defendant. The exercise equipment, however, appears on the Wallingford grand list of October 1, 1990, in the name of "National Properties, Inc., 4 Fairfield Boulevard," as commercial furniture with an assessment of $9450.[3]

On October 26, 1989, less than two weeks after Fairfield Associates III executed the lease termination agreement with Corporate Physique and purchased the exercise equipment listed in exhibit H, Fairfield Associates III executed a new lease for the same space previously occupied by Corporate Physique with a new health club, Healthworks, Ltd. (Healthworks). Attached to the lease as "Schedule B" was an "Equipment Rental" agreement pursuant to which Fairfield Associates III agreed to lease the exercise equipment it had purchased from Corporate Physique to Healthworks. In addition, the equipment rental agreement provided, inter alia,

---

[3] The personal property of Corporate Physique was listed as commercial furniture on the grand list in 1989 with an assessment of $67,000.

that "the equipment shall at all times be the sole and exclusive property of the Lessor." The lessor was identified as Fairfield Associates III. Ryan signed the lease and the equipment rental agreement on behalf of Fairfield Associates III.

Fairfield Associates III became delinquent in its mortgage payments to Bank Mart for 6 Fairfield Boulevard and defaulted. As a result of the default, Fairfield Associates III and Bank Mart entered into negotiations that culminated in an agreement to execute a deed in lieu of foreclosure agreement on April 23, 1991. In addition to agreeing to convey the real property located at 6 Fairfield Boulevard in exchange for a forgiveness of its debt of over $4,000,000, pursuant to the deed in lieu of foreclosure agreement, Fairfield Associates III agreed to convey to Bank Mart's nominee, F. A. Wallingford, III, Inc. (F. A. Wallingford), "[t]itle in and to all personal property of Borrower or Guarantors acquired for installation or use in connection with the Property . . . ."

The deed in lieu of foreclosure agreement required that at the closing, "a warranty Bill of Sale duly executed and acknowledged by Borrower, conveying to Nominee title to the Personal Property, free and clear of any encumbrances," would be provided to F. A. Wallingford. This agreement, plaintiff's exhibit I, differed from the other written documents in that it contained an express integration clause.[4]

The bill of sale for the personal property, referred to in the deed in lieu of foreclosure agreement, was admitted into evidence as exhibit J.[5] When the plaintiff's

---

[4] This clause provided: "This Agreement contains the entire agreement between the parties relating to the transaction contemplated hereby. All prior or contemporaneous agreements, understandings, representations and statements, oral or written are merged herein."

[5] In the plaintiff's exhibit J, Fairfield Associates III conveyed to F. A. Wallingford among other things: "All personal property of Seller located on the property known as 6 Fairfield Boulevard, Wallingford, Connecticut, all

exhibit J was introduced, schedule A was not attached. Penczer testified that at the time the deed in lieu of foreclosure agreement was executed, Fairfield Associates III did not own any personal property, so there was no need for a bill of sale. He therefore offered to give a bill of sale with a blank schedule attached. Penczer said that ultimately, he signed the plaintiff's exhibit J, the bill of sale, with no schedule attached.

In a letter dated April 29, 1991, Frederick Fallon, executive director of Healthworks, informed Penczer that the facility at 6 Fairfield Boulevard would close on October 31, 1991, and offered to purchase the exercise equipment for $30,000 payable in three annual installments of $10,000. Penczer later confirmed that a sale of the exercise equipment to Healthworks had taken place by way of a letter sent to Fallon dated July 31, 1991.[6] Healthworks had already begun to remove the exercise equipment from its leased premises at 6 Fairfield Boulevard prior to this letter. Bank Mart did not become aware of this situation until Healthworks had nearly completed the removal of the exercise equipment from the premises. On October 7, 1991, F. A. Wallingford, as a subsidiary of Bank Mart, began this action against the defendant to determine ownership of the fixtures.

In December, 1991, Bank Mart was found to be insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of Bank Mart. The FDIC

personal property of Seller acquired for the installation or use in connection with said property, wherever located . . . including without limitation, all personal property set forth on Schedule A attached hereto."

Jarvis signed for Fairfield Associates III and, along with partners Ryan and Penczer, also signed the document individually.

[6] The letter sent by Penczer, on behalf of the defendant, stated the following: "The purpose of this letter is to confirm to you that National Properties, Inc., was the owner of the attached list of equipment as reflected in the Town of Wallingford personal property tax rolls, and it did sell it to you and you have the right to possession of the property."

was substituted as party plaintiff for F. A. Wallingford on February 6, 1992. Subsequently, on January 27, 1993, the J. E. Company of New England, acting under a power of attorney from the FDIC, entered into an escrow agreement with the defendant. The escrow agreement provided that the sale of the exercise equipment by the defendant to Healthworks was approved, and the res, ownership of which was to be determined, was placed in escrow for the benefit of the prevailing party in this litigation. This escrow agreement was admitted as the plaintiff's exhibit M.[7]

The FDIC through its attorney-in-fact, J. E. Roberts, executed a bulk sale of the assets of the former Bank Mart to Remington Investments, Inc. (Remington). That bulk sale included the rights and claims of the FDIC in the present lawsuit. On December 11, 1995, Remington was substituted as party plaintiff and remains the plaintiff in this action.

This matter was tried before the trial court, which rendered judgment in favor of the plaintiff, on October 16, 1996, awarding cash proceeds of the exercise equipment to the plaintiff, conditioned on the plaintiff's filing an amended complaint. The court required that the amended complaint conform to the proof at trial, which indicated that the parties had entered into the escrow agreement.[8]

---

[7] The agreement provided in relevant part: "The parties agree that it is in their mutual interest for the sale of the equipment to Healthworks . . . that the price in terms for the sale of the equipment to Healthworks is fair and reasonable. . . . The proceeds of said sale shall be the res that is the subject of the action referred above, in lieu of the specific equipment named in the complaint . . . . This agreement shall inure to and be binding upon the parties and their respective successors and assigns. . . . This agreement and the fact that the execution of it shall not be admissible in evidence in the litigation and shall constitute neither a declaration nor an admission by either party to this agreement that title to the equipment is vested in either party."

[8] The escrow agreement (exhibit M) entered into by the defendant and the FDIC on January 27, 1993, provided in relevant part that the subject

## I

The defendant first claims that the trial court improperly quieted title to personal property pursuant to General Statutes § 47-31.[9] We disagree.

" '[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous.' " *Family Financial Services, Inc.*, v. *Spencer*, 41 Conn. App. 754, 759, 677 A.2d 479 (1996), quoting *Pandolphe Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The plaintiff originally brought this action pursuant to § 47-31, which provides a judicial mechanism for parties asserting competing interests in real or personal property to settle the issue of title. The prevailing party must prove its title or interest in the disputed property by a preponderance of the evidence. See *Loeb* v. *Al-Mor Corp.*, 42 Conn. Sup. 279, 287, 615 A.2d 182 (1991), aff'd, 224 Conn. 6, 615 A.2d 149 (1992). Moreover, that party must prevail on the strength of its own title and not on the weakness of its adversary's title. *Lake Garda Improvement Assn.* v. *Battistoni*, 155 Conn. 287, 293, 231 A.2d 276 (1967). For a party to prove its claim, it must produce the documents through which it acquired its interest in the property, and demonstrate "by at least one of the subscribing witnesses . . . the due execution of the [documents]." *Loewenberg* v. *Wallace*, 147 Conn. 689, 696, 166 A.2d 150 (1960).

matter of this action would be the cash proceeds from the sale of the exercise equipment rather than the equipment itself.

[9] General Statutes § 47-31 (b) provides in relevant part: "The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest. . . ."

At trial, in support of the plaintiff's claim, the plaintiff produced a bill of sale from Fairfield Associates III, the undisputed source of the plaintiff's claim of title, conveying the personal property of Fairfield Associates III to F. A. Wallingford (Bank Mart's nominee). The bill of sale conveyed to F. A. Wallingford "all personal property of [Fairfield Associates III] located on the property known as 6 Fairfield Boulevard." Title passed from F. A. Wallingford to the FDIC when the FDIC was appointed receiver for Bank Mart. The defendant acknowledged that the FDIC was the successor in interest to F. A. Wallingford to receive any title that Fairfield Associates III had when the defendant entered into the agreement that created the escrow fund for the disputed proceeds. By a subsequent assignment, the interest of the FDIC was transferred to the plaintiff.

In support of the defendant's claim, Penczer asserted title to the exercise equipment based on a check for $15,000 from Fairfield Associates V to Corporate Physique and then claimed that an intercompany transfer between Fairfield Associates V and the defendant took place. The defendant, however, cannot produce any documents related to the final transfer. The only evidence to support the claim of the defendant's ownership of the exercise equipment is Penczer's testimony that he registered the exercise equipment with the town of Wallingford assessor's office at the disclosed purchase price of $15,000 and a net depreciated value of $13,000. In addition, the defendant attempted to bolster its title claim by its offer of an explanation for the absence of schedule A in the transfer to F. A. Wallingford. Penczer testified that there was no schedule A attached because "there was no personal property to be conveyed." He, therefore, did not think there should be a bill of sale. In the end, however, there was a bill of sale signed by him, with no schedule attached, blank or otherwise.[10]

---

[10] Penczer testified that he agreed to give a bill of sale with a blank schedule attached.

Both parties in this case agree that the incident giving rise to this action took place when Corporate Physique sold the exercise equipment pursuant to the lease termination agreement. The plaintiff, however, produced a bill of sale emanating from the lease termination agreement and executed on the same day by Penczer on behalf of Fairfield Associates III, as well as by Jarvis and Ryan. The bill of sale conveyed to F. A. Wallingford "all personal property of [Fairfield Associates III] located on the property known as 6 Fairfield Boulevard, Wallingford, Connecticut, all personal property of [Fairfield Associates III] acquired for installation or use in connection with said property, wherever located." In view of this broad language, the trial court declined to accept Penczer's explanation for the absence of schedule A.

The defendant's production of a check from Fairfield Associates V's account and a claim of an intercompany transfer to the defendant, without supporting documentation, do not support a good chain of title. The plaintiff, however, produced documents that comprise an unbroken chain of title to the disputed property from Corporate Physique to Fairfield Associates III, then to F. A. Wallingford, then to the FDIC and, finally, to the plaintiff. The plaintiff's claim of title is well documented and a clear chain of title. Accordingly, we conclude that the plaintiff has complied with the requirements of § 47-31, and that the trial court properly quieted title in the plaintiff.

II

The defendant next claims that the trial court improperly admitted into evidence an escrow agreement that provided for the holding of the funds realized from the sale of the personalty entered into by the defendant and the FDIC. The defendant claims that the escrow agreement (1) was immaterial, (2) was a settlement

agreement and (3) provided that it would be inadmissible in the litigation. We disagree.

The issue of whether the trial court improperly admitted the escrow agreement into evidence is an evidentiary issue. Therefore, the proper standard of review is abuse of discretion. *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 752, 680 A.2d 301 (1996).

A

At trial, the defendant's counsel objected to the offer of exhibit M, the escrow agreement, on the ground of materiality. The defendant claims that the plaintiff made no allegation in the complaint concerning the escrow agreement or the fund established from the proceeds of the sale of exercise equipment to Healthworks. Thus, the defendant claims that exhibit M was immaterial to the facts and claims at issue.

The plaintiff contends that although the defendant maintained that the escrow agreement was immaterial, the defendant never raised the specific ground that the existence of that document was not alleged in the complaint. Accordingly, this claim was not properly preserved for appeal. See *State* v. *Sinclair*, 197 Conn. 574, 579, 500 A.2d 539 (1985). " 'Our rules of practice make it clear that counsel must object to a ruling of evidence, state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . . *State* v. *Lizotte*, 200 Conn. 734, 742A, 517 A.2d 610 (1986).' " *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 102, 709 A.2d 14 (1998).

B

The defendant's claim that the escrow agreement should not have been admitted because it was a settlement agreement is without merit. The terms of the escrow agreement that "[t]he escrow fund shall be held to answer the judgment . . . shall constitute neither a declaration nor an admission by either party to this agreement that title to the equipment is vested in either party" suggest that the parties recognized that the matter was in dispute. The escrow agreement is specific in stating that the litigation would continue until a judgment was rendered. Therefore, the escrow agreement cannot be viewed as a settlement agreement.

C

Finally, the defendant claims that the trial court improperly admitted into evidence the escrow agreement despite the provision in the agreement that it would not be admissible in the litigation. The defendant did not object to the admission of the agreement on this ground and, thus, waived any objection to the admission of the agreement. The fact that the defendant raised this objection for the first time in its reply to the plaintiff's posttrial brief, months after the trial, does not entitle it to a review of this ground on appeal. See *Thomaston* v. *Ives*, 156 Conn. 166, 175, 239 A.2d 515 (1968) (Supreme Court will not consider claim of evidentiary error unless specific objection made when evidence offered); *Sanderson* v. *Bob's Coaster Corp.*, 133 Conn. 677, 681, 54 A.2d 270 (1947) ("[w]e do not consider objections to evidence which the finding does not show were made when it was offered"). In *State* v. *Sinclair*, supra, 197 Conn. 579, our Supreme Court held: "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. . . . The reason for this rule is clear: it is to alert the trial court to an error while there is time

to correct it . . . and to give the opposing party an opportunity to argue against the objection at trial. To permit a party to raise a different ground on appeal than was raised during trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party." (Citations omitted.)

This court found in *Hicks* v. *Bronson*, 11 Conn. App. 808, 808–809, 526 A.2d 1350 (1987), that "[t]he sole claim pressed on appeal, however, was not within the allegations of the petition, even read broadly, and was only presented to the trial court in the petitioner's posttrial brief. Thus, the respondent had no timely notice that the claim was being litigated, and had no opportunity to introduce evidence to counter the claim." Consequently, the defendant is not entitled to review of its claim that the escrow agreement should not have been admitted into evidence.

### III

The defendant next claims that the trial court improperly rendered judgment in favor of the plaintiff and ordered relief not sought by the plaintiff. Specifically, the defendant claims that the trial court awarded ownership of the fund representing the proceeds of the sale of the exercise equipment where the plaintiff made no allegations concerning the fund in its complaint and made no claim for relief pertaining to the fund.

" 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . However, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery.' " (Citations omitted.) *Cellu Tissue*

*Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 417, 676 A.2d 405 (1996).

While we have acknowledged that the original complaint predated the escrow agreement and the resulting escrow fund, we construe the trial court's decision as quieting title to the exercise equipment and recognizing the stipulated substitution of the escrow fund for the exercise equipment. It would be disingenuous to claim that because the plaintiff did not request title to the escrow fund in the original complaint, which predated the escrow fund agreement, the trial court could not order such relief. The exercise equipment was converted to proceeds in a *mutually agreed* upon escrow fund for the mutual benefit of the parties.

IV

The defendant finally claims that the trial court improperly allowed the plaintiff to amend its complaint after trial. We disagree.

"[A] trial court may allow, in its discretion, an amendment to pleadings before, during, or as here, after trial to conform to the proof. *Wright* v. *Coe & Anderson, Inc.*, 156 Conn. 145, 155, 239 A.2d 493 (1968); *Thibault* v. *Frechette*, 135 Conn. 170, 173, 62 A.2d 863 (1948); cf. *Winsor* v. *Hawkins*, 130 Conn. 669, 670, 37 A.2d 222 (1944); General Statutes § 52-130 . . . . *Saphir* v. *Neustadt*, 177 Conn. 191, 206, 413 A.2d 843 (1979). Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. *Falby* v. *Zarembski*, 221 Conn. 14, 24, 602 A.2d 1 (1992). [W]here, as here, there is a variance between allegations in the [original complaint] and the proof at trial, which is corrected by amendment to the [original complaint], a judgment based on the amended [complaint] will not be set aside unless the variance misled or prejudiced

the defendants on the merits of the case." (Internal quotation marks omitted.) *Voll* v. *Lafayette Bank & Trust Co.*, 223 Conn. 419, 433, 613 A.2d 266 (1992).

Applying these principles to the case before us and on the basis of our conclusion in part III of this opinion regarding the propriety of the substitution of the escrow fund for the personal property, we conclude that the trial court properly exercised its discretion in permitting the posttrial amendment and in denying the defendant's motion to strike the amended complaint. Once the trial court admitted evidence of the escrow fund, the defendant was on notice that the trial court would consider this evidence in deciding whether, by stipulation of the parties, the exercise equipment was now represented by the escrow fund. The defendant, therefore, was not misled or prejudiced by the trial court's determination that the plaintiff had title to the equipment and, of necessity, to the escrow fund that now represented the equipment, in view of the fact that the parties had agreed to a sale of the equipment during the course of the lawsuit.

We conclude that the defendant was not misled or prejudiced by the amendment to the plaintiff's original complaint after trial. Accordingly, the trial court did not act improperly in ordering the amended complaint to conform the pleadings to the proof or in denying the defendant's motion to strike the amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.