STATE OF CONNECTICUT *v.* JESUS ROMERO
(AC 18953)

Zarella, Pellegrino and O'Connell, Js.

Argued May 9—officially released August 22, 2000

*Patrick F. Caruso*, with whom were *Peter W. Hull* and, on the brief, *Charles D. Ray*, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom were *Cara F. Eschuk*, assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Jesus Romero, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] one

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (2) and 53a-49,[2] one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21, as amended by Public Acts 1995, No. 95-147, § 1,[3] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[4] On appeal, the defendant claims that the trial court improperly admitted certain constancy of accusation testimony that was (1) made long after the events complained of, (2) no longer constant due to an intervening recantation, (3) beyond the scope permitted by State v. Troupe, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), and (4) in violation of the state and federal constitutions. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim was born on March 4, 1987. The defen-

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] Count six of the substitute information charged the defendant with risk of injury to a child for acts that allegedly occurred between July 1, 1995, and October 31, 1995. Section 53-21 was amended in 1995, the effective date of the amendment being October 1, 1995. General Statutes (Rev. to 1995) § 53-21, as amended by Public Acts 1995, No. 95-147, § 1, provides in relevant part: "Any person who . . . has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[4] In count seven of the state's substitute information, the defendant was charged with risk of injury to a child for acts that allegedly occurred between June 1 and September 30, 1993. General Statutes (Rev. to 1993) § 53-21 provides in relevant part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

dant was the boyfriend of the victim's mother. In 1989, the defendant lived with the mother and continued to live with the family for six years. The mother had one child with the defendant.

When the victim was five years old, the defendant began sexually abusing her. Between 1993 and 1995, the defendant on several occasions had the victim perform oral sex on him. On one occasion in 1994, the defendant attempted to have sexual intercourse with the victim, but was unsuccessful. During these incidents, the mother was not home.

The victim initially did not report these activities to anyone.[5] In August, 1996, however, the victim told her mother about the defendant's conduct. At this time, the defendant was not residing with the mother and the victim. The mother then contacted the police. Lieutenant Kathleen Wilson of the Waterbury police department interviewed the victim, who disclosed the details of the defendant's conduct, including that the defendant had a mole on his penis. Photographs submitted at trial confirmed this distinguishing mark as did the testimony of the victim, the victim's mother and the defendant. Moreover, the mother, *as well as the defendant*, testified that there was no innocent way that the victim could inadvertently have observed the defendant. In October, 1996, the police arrested and charged the defendant with risk of injury to a child, sexual assault in the first degree and attempt to commit sexual assault in the first degree.

On or about June, 1997, the victim's family moved to New Hampshire. At this time, the victim recanted her allegations to her mother. The mother took the victim to see Sidney Horowitz, a psychologist. During her

---

[5] She did not inform her mother of the sexual abuse because she thought her mother would be upset with her. In addition, the defendant had told her she would be in "big trouble" if she told anyone.

meeting with Horowitz, the victim again recanted her allegations against the defendant. At trial, the victim testified that she had recanted because she had felt bad for her half-brother, who was the defendant's son.

In 1997, the victim told a friend, Y, about the defendant's conduct. The victim then informed her mother that her original allegations against the defendant were true. Y testified as a constancy of accusation witness regarding the victim's complaint.

On July 7 and 8, 1998, the court granted motions by the defendant for judgment of acquittal of one count of attempt to commit sexual assault in the first degree and one count of risk of injury to a child. On July 10, 1998, the jury returned a verdict of guilty on the remaining five counts. On September 11, 1998, the court sentenced the defendant to a total effective sentence of twenty-five years imprisonment, suspended after fifteen years, and twenty-five years probation. This appeal followed. Additional facts will be set forth as they become relevant in the context of the defendant's claims.

I

The defendant claims first that the trial court improperly admitted into evidence Y's testimony under the constancy of accusation doctrine because the victim's statements to her were made "long" after the defendant was arrested and charged. We disagree.

"[A] trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997).

The constancy of accusation doctrine was an extension of the fresh complaint rule. See *State* v. *Troupe*,

supra, 237 Conn. 297. The fresh complaint rule, adopted in *State* v. *De Wolf*, 8 Conn. 93, 100 (1830), stated that "on an indictment for rape . . . such evidence is received to [show] constancy in the declarations of the witness. If a female testifies, that such an outrage has been committed on her person, an [inquiry] is, at once, suggested, why it was not communicated to her female friends." *State* v. *Kinney*, 44 Conn. 153 (1876), expanded the rule to allow the state to introduce testimony concerning the details of the complaint. "Why has the rule been adopted that in prosecutions for rape . . . the public prosecutor may show that the woman on whom the assault was made complained of it to her friends? It is simply because such a course would be natural if the crime had been committed, but very unnatural if it had not been." Id., 156.

Before modifying the constancy of accusation doctrine in *Troupe*, the court allowed "the state to introduce the fact . . . and . . . details of the complaint once the victim [had] testified regarding the alleged sexual assault and the identity of the person or persons to whom a complaint had been made." *State* v. *Troupe*, supra, 237 Conn. 297. In *Troupe*, our Supreme Court concluded that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator . . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." Id., 304. Furthermore, "[b]efore the evidence may be admitted . . . the victim must first have testified concerning the facts of the sexual assault and

the identity of the person . . . to whom the incident was reported." Id., 304–305.

In the present case, Y's testimony concerning the victim's statements to her is not inadmissible on the ground that the statements were made a long time after the victim first complained about the assault. Our Supreme Court has stated that "[a] delayed report . . . was not subject to exclusion on the ground that it had not been made at a 'natural' time." *State* v. *Parris*, 219 Conn. 283, 291, 592 A.2d 943 (1991). Moreover, "[w]hatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it." *State* v. *Brigandi*, 186 Conn. 521, 529, 442 A.2d 927 (1982). The delay, therefore, in the victim's statements to Y does not make Y's testimony inadmissible, but rather, is a factor to be considered by the trier of fact.

The defendant also claims that the constancy of accusation doctrine is inapplicable to a victim's statements to a witness made after a victim's recantation because the statements are not made in the "natural" course. Our Supreme Court has stated that prior court decisions "did not condition the admission of constancy evidence upon a court's finding that the victim's statements had been made at a 'natural' time." *State* v. *Parris*, supra, 219 Conn. 289. Furthermore, "the term 'natural' as employed in our prior caselaw was not connected to any preliminary issue of admissibility for the trial court's resolution." Id., 290. Rather, "[t]hat term merely represents the phenomenon of human behavioral expectations that lends corroborative force, on one hand, to a sexual assault victim's report of the fact of the incident and its details to another, and lends impeaching force, on the other hand, to the victim's failure to make such

a report or include particular details in the report made." Id.

Accordingly, we follow the Supreme Court's assertions in *Parris* that the admission of constancy of accusation evidence is not conditioned on the victim's statements to the witness being made at a "natural" time. The defendant's claim, therefore, is rejected.

II

The defendant next argues that the victim's recantation caused a break in the chain of constant accusation, thereby rendering her subsequent corroborative statements inadmissible as a matter of law. Because the defendant did not properly preserve this claim at trial, we decline to review it.

After other constancy witnesses had testified and recantation evidence had been admitted, the defendant objected to the admission of Y's constancy testimony.[6] The defendant objected on the ground that Y's testimony was unreliable, irrelevant and should not exceed the scope of *Troupe*. The defendant further objected that Y's testimony was immaterial, unnecessary to remove juror bias and impermissible because Y was a child. On appeal, the defendant now raises for the first time the claim that the victim's recantation "broke" the chain of constant accusation, rendering Y's testimony inadmissible as constancy evidence.

---

[6] The defendant's attorney raised the following objection at trial: "I don't think it's in any way relevant or admissible in any way to have this other young lady testify . . . . My point is that if this witness is going to testify about anything other than the limited things permitted in *Troupe*, I don't think it's permissible. . . . I just don't think it's material. . . . What I'm saying is, it is immaterial because it is not proving anything. The only thing that a constancy witness should be allowed to prove under the constancy case is to remove this bias jurors have regarding the lack of a fresh report. That's not the case here. . . . [F]or the purpose of a constancy witness, I think at the very least it should be an adult, not another child."

"Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. . . . To permit a party to raise a different ground on appeal than was raised during trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 801–802, 716 A.2d 141 (1998). "We have consistently refused to consider evidentiary rulings not properly preserved. Where the issue raised for the first time on appeal is a matter of state evidentiary law, rather than of constitutional significance, this court will deny the defendant appellate review." *State v. Smith*, 46 Conn. App. 600, 609, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997). Because the defendant's evidentiary claim was raised for the first time on appeal, we decline to review it.

### III

The defendant also claims that the trial court improperly admitted certain constancy of accusation evidence by Y that exceeded the scope of testimony permitted under *Troupe*. We disagree.

The following additional facts are necessary to the determination of this issue. Prior to Y's testimony, the court properly charged the jury concerning the constancy of accusation doctrine.[7]

---

[7] The court provided the following jury instructions: "We have a hearsay rule that you can't have someone come in and testify as to what somebody else said. We also have a number of exceptions to that rule, and one of them is in the particular case where there are charges of a sexual nature. In these particular cases, we allow people to testify as to what someone told them . . . . That evidence is allowable in our courts to corroborate the testimony of [the victim]. It's not testimony that that's the truth, but, it's the truth that she did say that to them. . . ." The court then repeated to the jury that "[t]he evidence is, again, admitted solely to corroborate her testimony in court, and is to be considered by you only in determining the weight and credibility you will give to her testimony." The court further added that constancy witnesses cannot testify as to all of the details, but

The state then called Y, a twelve year old girl, to testify as a constancy of accusation witness. During direct examination, Y testified as to how she knew the victim and how the victim had told her that the victim had been sexually assaulted. More specifically, Y testified that "[s]he told me she had been molested" by "her stepfather" and "[s]he said that she had to touch him, and . . . he touched her." Y also stated that the victim was nervous and crying when she told Y about the assault. The state proceeded to ask if Y said anything to the victim about "telling the truth to grownups,"[8] and Y initially answered, "Yeah," but then stated that she did not understand the question. The state further asked if Y had told the victim what "she should do about telling the police," but Y could not remember.

The defendant first claims that Y's testimony about the victim's demeanor when she recounted the assault to Y should not have been admitted because of its prejudicial quality. The defendant failed to object properly to this testimony at trial.

"This court is not bound to consider claims of law not made at the trial. . . . [T]o preserve an evidentiary ruling for review, trial counsel must object properly." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 427, 735 A.2d 778 (1999). "Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise

can only give "general statements just to confirm and corroborate that [the victim] did say those to them."

[8] Prior to Y's testimony, the court allowed the state to ask one question concerning what Y had told the victim about "telling the truth" to adults or in regard to the "pursuit of this case."

nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Citations omitted; internal quotation marks omitted.) Id., 427–28. "We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection." (Internal quotation marks omitted.) *Remington Investments, Inc.* v. *National Properties, Inc.*, supra, 49 Conn. App. 800. Because the defendant failed to preserve his claim properly by articulating the basis for his objection to this evidentiary ruling, we decline to review this claim.[9]

The defendant's claim that the trial court improperly admitted Y's testimony concerning "telling the truth" to adults is also unavailing. The transcript clearly reveals that although Y initially answered affirmatively to the state's question whether Y had told the victim about "telling the truth" to adults, when the next question was asked, Y answered that she was confused about the state's prior question. Accordingly, Y's testimony did not reveal anything about encouraging the victim to tell the truth to adults. The admission of this evidence, therefore, does not violate the rule set forth in *Troupe*. We reject the defendant's claim.

## IV

The defendant's final claim is that by admitting Y's constancy of accusation testimony, the trial court violated the defendant's rights under the confrontation clause of the sixth amendment to the federal constitution and under article first, § 8, of the Connecticut constitution.[10] We disagree.

---

[9] The defendant merely objected to the state's question without providing a basis for his objection.

[10] The defendant's treatment of the state constitutional claim is limited to a footnote citing the six prong test of *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), but no further analysis is provided. Because the defendant has not sufficiently briefed the state constitutional claim, we therefore decline to address it.

Although the defendant failed to raise this claim at trial, he now seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, a defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. Further, "[i]n the absence of any one of these conditions, the defendant's claim will fail." Id., 240.

Under the first prong of *Golding*, the record before us is adequate for review. The defendant, however, has failed to meet the second prong of *Golding* because his claim is not one of constitutional magnitude. In Connecticut, it is well established that the constancy of accusation doctrine does not violate a defendant's sixth amendment right to confrontation. See *State* v. *Troupe*, supra, 237 Conn. 293; *State* v. *Lindstrom*, 46 Conn. App. 810, 816, 702 A.2d 410 ("[o]ur Supreme Court has held that the constancy of accusation doctrine does not violate the right to confrontation"), cert. denied, 243 Conn. 947, 704 A.2d 802 (1997). Our Supreme Court in *Troupe* explained that a "fundamental tenet of confrontation clause jurisprudence . . . [is] that the clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (Internal quotation marks omitted.) *State* v. *Troupe*, supra, 292.

In the present case, the defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling."

(Internal quotation marks omitted.) *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). Accordingly, because the defendant's claim is not one of constitutional magnitude, we decline to afford review under *Golding.*

A plain error review of the record is equally unavailing. The record reveals that the defendant had an opportunity to cross-examine Y regarding her testimony, but declined. Moreover, the court properly charged the jury on the use and purpose of constancy of accusation evidence, and three times stressed that Y's testimony was only to be used for corroborative purposes. On the basis of our review of the record, we conclude that the admission of Y's constancy testimony did not affect the fairness, integrity or public confidence in judicial proceedings. The admission of Y's testimony, therefore, does not constitute plain error. We therefore reject the defendant's constitutional claims under either standard.

The judgment is affirmed.

In this opinion the other judges concurred.