[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST-TRIAL REQUEST FOR LEAVE TO AMEND COMPLAINT AND ON THE MERITS AFTER A TRIAL TO THE COURT
This case concerns the failure to pay real estate commissions to the plaintiff, who was employed as a real estate sales person. The defendants are Westside Realtors and Appraisers, Inc. (Westside), a Connecticut corporation, and Joaquim (Jack) Assuncao, in his individual capacity as the president and principal owner of Westside. The complaint was brought in five counts: breach of contract as to Westside (first count); estoppel as to Westside and Assuncao (second count); false representations as to Westside and Assuncao (third count) Connecticut Unfair Trade Practices Act (CUTPA) as to Westside and Assuncao (fourth count); and breach of contract against Westside (fifth count), with respect to a different transaction than was involved in the first count. The court (Holzberg,J.), on August 2, 2000, granted summary judgment for the plaintiff and against the corporate defendant, Westside, on the first and fifth counts of the complaint. Judgment was entered on the first count in the amount of $18,720 plus interest of $5,616, and on the fifth count in the amount of $4,073.85.
On July 17, 2001, the case was tried to this court on the remaining counts 2, 3 and 4, against the individual defendant, Assuncao.[1] At trial, the court directed a verdict and dismissed the plaintiff's CUTPA CT Page 11303 claim (fourth count). Subsequent to the trial before the court, the plaintiff on August 6, 2001, moved to amend his complaint to conform to the proof to add a fourth count (in lieu of the CUTPA fourth count which had been dismissed at trial). The new fourth count seeks to add a cause of action for "piercing the corporate veil" to hold the defendant Assuncao liable for the actions of Westside.
In Connecticut, a trial court may in its discretion allow an amendment to pleadings after trial to conform to the proof. RemingtonInvestments v. National Properties, Inc., 49 Conn. App. 789, 803 (1998). An amendment is ordinarily not allowed if it would prejudice the defendant on the merits of the case. Voll v. Lafayette Bank and TrustCo., 223 Conn. 419 (1992).
The court denies the motion to amend on the grounds that it would serve to prejudice the defendant, and more importantly, the proof did not support a claim for "piercing the corporate veil." The Connecticut law on piercing the corporate veil is found in Zaist v. Olson, 154 Conn. 563,573-74 (1967), providing in pertinent part that
 [c]ourts will disregard the fiction of a separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where . . . the interests of justice and righteous dealings so demand. . . . The circumstance that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will, or existence of its own and is but a business conduit for its principal.
(Citations omitted; internal quotation marks omitted.) Id.
The Connecticut Supreme Court has recognized two tests to determine when piercing the corporate veil is appropriate: the instrumentality test and the identity test. Davenport v. Quinn, 53 Conn. App. 282, 300
(1999). "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) control, not mere majority or complete stock control, but complete domination, not only of finances but CT Page 11304 of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or a wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: if plaintiff can show that there was such a unity of interest in ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Citations omitted; emphasis in original; internal quotation marks omitted.) AngeloTomasso, Inc. v. Armor Construction Paving, Inc., 187 Conn. 544, 553-54
(1982).
"The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under exceptional circumstances." (Citation omitted; internal quotation marks omitted.)Davenport v. Quinn, supra, 53 Conn. App. 301.
The witnesses at trial were the plaintiff, the defendant and an attorney involved in a real estate closing. The plaintiff had very little information about the corporate operations. The defendant established the following: (1) the corporation was properly registered and had remained in good standing since 1991; (2) the corporation executed a lease of the property from which its business operations were conducted; (3) the contracts, listing agreements and corresponding checks and other documentation presented as evidence all related to the business operation of Westside. See plaintiff's exhibits 4, 5, 6, 7, 8, 9, 10; defendant's exhibits B, C, E, F, G, H, K and L.
The defendants Assuncao and Westside never commingled their assets or finances, and Westside's business practices were entirely separate from those of the defendant Assuncao.
Thus, there is no proof to which the proposed amendment to the complaint would conform, with regard to piercing the corporate veil. It also would serve to prejudice the defendant if the court were to allow a post-trial amendment of the complaint, because the plaintiff's counsel asserted at trial that he was not seeking to "pierce the corporate veil." If the defendants had been made aware at trial that the plaintiff intended to rely on piercing the corporate veil as a theory of his case, then the defendants could have provided additional evidence with which to CT Page 11305 rebut the claim. Now is too late. The motion to amend the complaint post-trial is denied.
With regard to the remaining claims, the court finds the following facts relevant. The plaintiff DaSilva worked as a real estate salesperson for Westside, under the terms of an independent contractor agreement. The original agreement of April 28, 1992, provided the plaintiff with 60% of the commissions which Westside received from DaSilva's customers. This agreement was amended on August 6, 1996, to increase the percentage to 65% for sales contracts ratified after July 15, 1996.
The plaintiff was first licensed as a real estate salesperson in or around 1986. He continued in that capacity except for a period when his license lapsed from May, 1996 through October, 1996. The lapse was solely a result of the plaintiff's failure to file a renewal application as a consequence of his financial difficulties which prevented him from paying the $265 licensing fee.
The dispute in this case centers primarily on the commission resulting from the sale of property belonging to one of the plaintiff's customers, Norman Weid, Sr. (Weid), which resulted in a commission of $28,800.
The plaintiff on June 26, 1996, obtained a new right to sell listing agreement for Westside from Weid. On July 17, 1996, Weid signed a sales agreement whereby he agreed to sell the listed property to Naugatuck Valley Savings and Loan Association for $360,000. The sale at that price would yield a commission of $28,800 pursuant to the listing agreement. The plaintiff's payment pursuant to the August 6, 1996, independent contractor agreement, if applicable, would have yielded a payment of $18,720.
The plaintiff on September 30, 1996, notified Westside and Assuncao that he was terminating his affiliation with Westside effective October 30, 1996. The plaintiff and defendant on September 30th agreed that the plaintiff's termination would be effective October 2, 1996, the date he affiliated with another real estate agency. The Weid closing took place on October 28, 1996. The defendant Assuncao was away on a cruise at the time of the closing and did not return until November 2 or 3, 1996. The plaintiff sought to have the closing attorney, Mr. McSherry, prepare two checks for the commission, one paying the plaintiff his percentage. A representative of Westside objected to such procedure and insisted that the full commission be paid to Westside. The plaintiff obtained the full commission check from McSherry and personally delivered it to Assuncao on November 5, 1996. Westside through a letter signed by Assuncao on November 5, 1996, notified the plaintiff that it was not paying him for the sale of the Weid property because his license had lapsed. CT Page 11306
Weid subsequently sued Westside for the return of the $28,800 commission because of the lapse of the plaintiff's license. Westside won the trial of the case and retained the full amount of the commission. On August 2, 2000, the court (Holzberg, J.) entered summary judgment for the plaintiff against Westside on the first and fifth counts of the complaint.
The court has denied the plaintiff's motion to amend his complaint and thereby seek to pierce the corporate veil. The court also declines to apply the authority of Scribner v. O'Brien, Inc., 169 Conn. 389 (1975), to hold a corporate officer personally liable. In his post-trial brief, the plaintiff cites Scribner for the proposition that "where an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Id., 404. The court does not find that the defendant Assuncao participated in the commission of a tort.
The failure to renew his real estate license was solely the result of the plaintiff's financial predicament. Westside, acting through Assuncao, had always paid the plaintiff during their several years association, pursuant to the independent contractor agreement. Though the Weid commission was in fact a substantial payment, a larger commission had been paid to the plaintiff.
The plaintiff testified that Assuncao knew his license had lapsed, and encouraged him to renew it. Assuncao testified that he was not aware of the expiration of the plaintiff's license until early in November of 1996, when, in connection with the plaintiff's termination of his relationship with Westside, Assuncao checked with the real estate commission to remove the plaintiff's name from records associating him with Westside.
The plaintiff has failed to sustain his burden of proof with respect to Assuncao's knowledge of the lapse of the plaintiff's license prior to early November, 1996.
The fact that Assuncao first learned in November of 1996 that the plaintiff's license had lapsed prior to the relinquishment of his association with Westside fatally undermines the plaintiff's estoppel and false representation claims asserted in the second and third counts of his complaint. General Statutes § 20-312 (a) prohibits persons from acting as real estate salespersons unless properly licensed. Section 20-312
(b) directs that "no . . . corporation shall be granted a real estate broker's license, . . . unless every salesperson who is affiliated with such . . . corporation as an independent contractor holds a license as a CT Page 11307 real estate salesperson." The facts indicate that the plaintiff was not licensed at the time of the listing agreement or at the time of the sales agreement. A claim of estoppel is predicated on proof of calculation or inducement by another to believe that certain facts exist. MiddlesexMutual Assurance Co. v. Walsh, 218 Conn. 681, 699 (1991). False representations also must be made for the purpose of inducing action. J.Frederick Scholes Agency v. Mitchell, 191 Conn. 353 (1983). The plaintiff's failure to meet the burden of proof is especially apparent with respect to the false representation claim, which encompasses an element of fraud. See Hathaway v. Bornman, 137 Conn. 322, 324, 767 A.2d 91
(1950) "Fraud is not to be presumed but must be proven by clear and satisfactory evidence." (Citations omitted.) Miller v. Appleby,183 Conn. 51, 55 (1981). There was no evidence presented proving that Assuncao knowingly placed the plaintiff, himself and Westside in a position that could potentially jeopardize his business.
The court concurs with Judge Holzberg's summary judgment decision on the contractual claims asserted in the first and fifth counts of the complaint; however, Asuncao did present substantial reasons for declining to pay the commission to a salesperson whose license had lapsed.
Accordingly, judgment enters for the defendant Assuncao on the second and third count of the complaint. Judgment entered previously on the first and fifth counts, in favor of the plaintiff. The fourth count was dismissed at trial on a motion for directed verdict.
So ordered.
ROBERT F. McWEENY, J.