STATE OF CONNECTICUT *v.* RALSTON E. SAMUELS
(AC 21681)

Dranginis, Flynn and Bishop, Js.

Argued October 23, 2002—officially released March 25, 2003

*Jeanne M. Zulick*, deputy assistant public defender, with whom was *G. Douglas Nash*, public defender, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kimberley N. Perrelli*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Ralston E. Samuels, appeals from the judgment of conviction, rendered after a jury trial, of four counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and four counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2).[2] He claims that the trial court improperly replaced a juror with an alternate by using a nonstatutorily sanctioned selection method, that it abused its discretion by allowing the state to amend its long form information after the jury had been impaneled and that the court improperly allowed the state to call multiple constancy of accusation witnesses. We reverse the judgment of the trial court.

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1997) § 53-21 (2) provides that person is guilty of risk of injury to a child if that person "has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

The jury reasonably could have found the following facts. During the 1998-1999 school year, the victim,[3] who was then thirteen years old, lived with her grandmother. In the basement apartment of the grandmother's house lived the defendant, who was twenty-four years old at the time. The victim met the defendant shortly after she moved into her grandmother's house in September, 1998. The defendant would frequently spend time with the grandmother, who was partially blind, and the victim, and occasionally would drive them to go shopping.

In the summer of 1999, a dispute arose between the defendant and the grandmother, ostensibly over an unpaid loan to the defendant by the grandmother. The defendant was asked to move out of the basement apartment, which he did in late June, 1999. Soon after, the grandmother asked the victim's uncle, a friend of the defendant, to ask the victim if anything "was going on between [the defendant] and [the victim]." When the uncle asked the victim about her relationship with the defendant, she alleged that on four separate occasions, she had had sexual intercourse with the defendant.[4] The police were notified shortly thereafter, and a report was filed on July 2, 1999.

At the trial, which took place from July 17 through 20, 2000, the state called fourteen witnesses, seven of whom were constancy of accusation witnesses.[5] The

[3] In keeping with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be revealed. See General Statutes § 54-86e.

[4] In her initial report to the police, the victim alleged that the incidents took place between December, 1998, and February, 1999. Later statements by the victim alleged that the incidents took place ten to twenty times between December, 1998, and June, 1999; the amended long information included the new dates, but not the additional alleged incidents.

[5] The constancy of accusation witnesses included (in order of encounter with the victim) the victim's friend, T, the victim's uncle, two police officers, the victim's therapist and two schoolteachers.

defense called the defendant as its sole witness. The jury found the defendant guilty on all counts. On September 29, 2000, he was sentenced to thirty years incarceration, execution suspended after fifteen years, with twenty-seven months as a mandatory minimum sentence. Additional facts will be supplied as necessary.

On appeal, the defendant advances the following claims. When a juror needed to be replaced by an alternate, the court did not select the new juror by lot, as was prescribed by statute.[6] Further, the defendant claims that the state amended its long form information at such a late date in the trial as to violate his constitutional right to due process. Last, the defendant claims that four of the constancy of accusation witnesses improperly were allowed to give testimony and that the admission of their impermissible hearsay testimony denied him a fair trial. Because we agree with the defendant as to the last claim, we need not reach the first two claims.

I

The constancy of accusation doctrine has a long history in Connecticut, but its underlying rationale, questionable from the outset, has come under increased scrutiny in recent years.[7] *State* v. *Troupe*, 237 Conn. 284, 294, 677 A.2d 917 (1996) (en banc). The rationale stems from the ancient belief that a victim of a violent crime would naturally cry out immediately after an assault and that, by implication, if such a victim did cry out, her complaint was more likely true. Id., 295. That belief led to the corresponding supposition that a jury

---

[6] See General Statutes § 54-82 h (c). Although there was error in the trial court's alternate juror selection method, we need not reach the question of whether it was reversible error because we dispose of the appeal on other grounds.

[7] For an excellent survey of the evolving doctrine, see R. Block, "The New Face of Connecticut's Constancy of Accusation Doctrine: *State* v. *Troupe*," 29 Conn. L. Rev. 1713 (1997).

would treat with skepticism one who did not cry out soon after she was attacked. Id., 294. So profound was the belief in that sociological phenomenon, and so entrenched was the distrust in a victim's delayed complaint, that proof of "hue and cry" became a formal prerequisite for the prosecution of any rape case.[8] Id., 294–96.

With the advent of the hearsay rule in the early 1800s, an exception was carved out for those fresh complaints, partially as a means to dispel the jury's inclination to distrust the victim if there were a delay in reporting. Id., 296. "Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of rape." (Internal quotation marks omitted.) Id. In effect, the fresh complaint rule allowed a victim to testify that she had told others about an alleged sexual assault as anticipatory rebuttal against an attack on her credibility, either by the defendant or by the unspoken bias of jurors who, it was presumed, would tend to discredit a victim's claims unless she offered testimony that she had complained soon after the assault.

The fresh complaint rule, in turn, spawned our current constancy of accusation doctrine.[9] Accordingly, those to whom a victim purportedly made a complaint are permitted to testify that such a complaint was, in fact, made to them. That testimony is permitted to corroborate the victim's testimony that she made such a complaint. Unlike courts in the majority of states, Connecticut courts had, historically, allowed constancy testimony for both the fact that a victim reported an

---

[8] In fact, until 1974 when the legislature repealed General Statutes (Rev. to 1972) § 53a-68; see Public Acts 1974, No. 74-131; a defendant could not be convicted of sexual assault based on the uncorroborated testimony of the victim alone. See *In re Robert K.*, 12 Conn. App. 585, 589 n.1, 532 A.2d 1319 (1987).

[9] See *State* v. *Kinney*, 44 Conn. 153 (1876).

assault and the details of what was said by the victim to the witness. Id., 297–99. Thus, the witness to whom the victim purportedly complained was permitted to testify as to the details of the victim's complaint to corroborate the victim's testimony that she did, in fact, complain as stated. Recently, however, our courts' attitude to such testimony has become more circumspect, and, although the central element of the doctrine has been maintained, the scope of it has been consciously restricted.

In *Troupe*, our Supreme Court expressly modified the doctrine to allow constancy of accusation testimony for the limited purpose of showing only that a complaint was made. Id., 304. Testimony is to be restricted to such facts as the identity of the alleged perpetrator and the timing of the victim's complaint, details to be "limited to those necessary to associate the victim's complaint with the pending charge . . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons *to whom the incident was reported*." (Emphasis added.) Id., 304–305. The court's modification of the constancy of accusation rule was codified in § 6-11 (c) of the Connecticut Code of Evidence.[10]

In *Troupe*, our Supreme Court held that "[a]lthough we agree that the assumptions underlying the constancy of accusation doctrine are unfounded, we are also cog-

[10] Connecticut Code of Evidence § 6-11 (c) provides in relevant part: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. . . . The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

nizant of the fact that those misconceptions are not uncommon. . . . Hence, we hesitate to discard the benefit of this rule to a woman who does complain without a clearer understanding of the burdens the rule may impose on the woman who does not complain." (Internal quotation marks omitted.) Id., 301–302.

## II

Through that prism of history, we now review the defendant's claims. The defendant claims, for two different reasons, that the court improperly allowed the testimony of four different constancy of accusation witnesses and requests that we review those claims. To the extent that the defendant raises claims not raised at trial, he requests review under the guidelines set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, additionally, he requests plain error review. See Practice Book § 60-5.

The first reason, the defendant argues, is that the victim did not testify that she actually had complained of the incident(s) to the witnesses and, therefore, the witnesses' testimony was not corroborative of the victim's testimony. The second reason offered by the defendant is that the alleged complaints to three of the witnesses occurred after the formal report to the police and that this should preclude the witnesses from being called under the constancy of accusation doctrine. Over the defendant's objection, all of those witnesses were, nevertheless, called on by the state as constancy of accusation witnesses and all testified. We will examine the testimony of the victim and the witnesses in regard to each of those claims.

We note at this point that evidentiary claims are reviewed pursuant to an abuse of discretion standard. *State* v. *Pereira*, 72 Conn. App. 107, 117, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). Moreover, "[e]videntiary rulings will be overturned on

appeal only where there was an abuse of discretion *and* a showing by the defendant of substantial prejudice or injustice." (Emphasis added; internal quotation marks omitted.) *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990).

A

Constancy Witness T

The victim testified that while at a Valentine's Day party in February, 1999, she spoke about the defendant to two friends, one of whom, T, later was called as a constancy of accusation witness. The following colloquy took place between the prosecutor and the victim:

"[Prosecutor]: Did you tell anyone during the time that he was having sex with you? Did you tell anybody about him?

"[The Witness]: I told two people that—how he said that he considers me as his girlfriend.

"[Prosecutor]: Did you tell them anything else?

"[The Witness]: No.

"[Prosecutor]: Are you sure?

"[The Witness]: Yes.

"[Prosecutor]: Could you be mistaken?

"[The Witness]: I might be.

"[Prosecutor]: Who did you—who did you talk to?

\* \* \*

"[The Witness]: [A relative, C] and the other girl was [T].

\* \* \*

"[Prosecutor]: Other than [C] and [T], while you thought the defendant was your boyfriend, did you tell anyone else?

"[The Witness]: No.

"[Prosecutor]: Actually, did you tell someone else what had happened?

"[The Witness]: Yes.

"[Prosecutor]: Who did you tell?

"[The Witness]: My uncle."

At several other points in the trial, the victim largely reiterated that same testimony,[11] i.e., that she had told

---

[11] The victim testified in relevant part as follows:

"[Defense Counsel]: Okay. Now, you testified you gave five to eight statements, we'll call them, right, about this incident? Can you—can you bring us back to the very first statement you made, to one?

"[The Witness]: I spoke to my uncle about the whole situation.

"[Defense Counsel]: Okay. That was—when was that?

"[The Witness]: In June of 1999.

＊＊＊

"[Defense Counsel]: Okay. Now, on direct examination you testified that you told two—are these classmates of yours, about [the defendant]. Is that correct?

"[The Witness]: That I can remember.

"[Defense Counsel]: Who did you first tell about this incident?

"[The Witness]: The—I—are you talk—the only people I told was [C] and [T].

"[Defense Counsel]: And you told them that you and he were boy-friend-girlfriend?

"[The Witness]: Yes.

"[Defense Counsel]: You didn't get into any details.

"[The Witness]: No.

"[Defense Counsel]: And after [T] and [C]—and that, you said, was in February of 1999?

"[The Witness]: Yes.

"[Defense Counsel]: Who was the next person you talked to about this?

"[The Witness]: My uncle.

＊＊＊

"[Defense Counsel]: . . . And that was before you told anybody about this allegation that brings us to court?

"[The Witness]: Not that I know of.

"[Defense Counsel]: In other words, on June 24, 1999, you hadn't told anybody—your uncle, your mother, your grandmother, the police—about what brings us here today before that date. Is that right?

"[The Witness]: Yes.

＊＊＊

T and C that she and the defendant had a boyfriend-girlfriend relationship.

As the court held in *Troupe*, the prerequisites for the admission of constancy of accusation testimony are (1) that the victim testify that an assault took place and (2) that she testify as to the identity of the person to whom she reported the assault. Although it is uncontroverted that the victim testified that an assault took place, her testimony shows that she did not ever claim that she reported it to her friends, T and C. The premise of admitting constancy of accusation witnesses is to show a reciprocity between a victim's testimony concerning a complaint made to a witness and the witness's testimony concerning the complaint made by the victim. For there to be a comparison, the victim must testify that she actually complained of the incident to the witness. That the victim said the defendant considered her to be his girlfriend—whatever meaning may be attached to that statement—plainly falls short of a report of an incident (or incidents) of sexual assault.[12]

Although we agree that testimony that qualifies as "a report of the incident" need not contain magic words,

---

"[Prosecutor]: . . . [W]hen you were talking about disclosing to your uncle and the police and so forth, that all occurred after the defendant moved out. Right?

"[The Witness]: Yes.

\* \* \*

"[Prosecutor]: Do you recall your earlier testimony that you did talk to your two cousins, your friend [T] and [C] in February of 1999?

"[The Witness]: Yes.

"[Prosecutor]: Is that right?

"[The Witness]: Yes.

"[Prosecutor]: So, you had told someone about your relationship with him prior to the police being called in June and then finally the complaint being made after you finally disclosed to your uncle. Is that right?

"[The Witness]: Yes."

[12] Defense counsel did not object to the testimony of the victim. Although, as the record shows, her testimony did not comport with the edicts of *Troupe* as constancy of accusation, whether that testimony itself was impermissible is not at issue before us.

or, even necessarily be a precise statement,[13] it should, minimally, be a statement that a reasonable person would find to be relating an incident of sexual assault. The victim's testimony regarding her conversation with T, we believe, cannot accurately be characterized as a complaint or a "report of the incident" as required by *Troupe* and § 6-11 (c) of the Connecticut Code of Evidence.

Although we determine that the victim testified that she had not reported the incident to T, T nevertheless was called as a constancy of accusation witness, and, when called, testified that the victim had, in fact, reported that she had intercourse with the defendant:

"[Prosecutor]: Did [the victim] talk to you about anything about [the defendant] the night of the party? . . .

"[The Witness]: She told me that [the defendant] was her boyfriend and that she had sex with him. And that was it.

"[Prosecutor]: Did she say when she would have sex with him?

"[The Witness]: No, she did not.

"[Prosecutor]: Did she say where she would have sex with him?

"[The Witness]: At his house.

"[Prosecutor]: And did she say when she would go down there?

"[The Witness]: When [her grandmother]'s not home . . . ."

The defendant specifically objected to the testimony of T on the ground that the testimony of the victim did not indicate that she had reported the incident to T.

---

[13] In fact, we have held that circumstantial evidence can be used to help lay the foundation that a complaint was made. See *State* v. *Orhan*, 52 Conn. App. 231, 240–42, 726 A.2d 629 (1999).

That objection was timely made and was adequate to perfect the matter for review. As such, we agree with the defendant that the testimony of T as a constancy of accusation witness was improperly admitted.

## B
### The Constancy Witness Teachers

We turn next to the testimony of the victim regarding her interaction with two of her schoolteachers who were permitted to testify as constancy of accusation witnesses. At trial, the defendant objected to the testimony of the two teachers on the ground that the alleged complaint to them occurred after the victim had filed her official police report, and, thus, was outside the ambit of the constancy of accusation doctrine. On appeal, the defendant additionally objects to the teachers' testimony on the ground that the victim did not testify that she had complained of the incident to either of those witnesses and that she had, in fact, never actually complained of the incident to the witnesses.[14] The defendant requests *Golding* review of his additional ground. Because we agree with the first claim, we need not reach the second.[15]

---

[14] The victim's testimony in relevant part was as follows:

"[Prosecutor]: Did you ever tell anyone at school?

"[The Witness]: I didn't tell nobody at school. I just asked one of my teachers a question. So, I guess he considered it that I was talking about myself.

"[Prosecutor]: Oh, okay.

"[The Witness]: Because we were watching a movie that had to do with the same thing.

\* \* \*

"[Defense Counsel]: Who was the next person you talked to about this?

"[The Witness]: My uncle. And I had talked to one of my teachers in school this year about—about an incident that we were watching a movie of. And I didn't mention myself.

\* \* \*

"[Defense Counsel]: You testified earlier that you had seen a movie at school that triggered a question that you had for the teachers. Is that right?

"[The Witness]: Yes."

[15] We conclude that the testimony improperly was admitted on the former ground rather than on the latter because "[t]his court has a basic judicial

Specifically, the defendant claims that complaints made after the official charge do not fall under the constancy of accusation doctrine, and, as those complaints were made after that had occurred,[16] they are not proper subjects of constancy testimony. In light of the stated purpose of the constancy exception, we agree that the objection has merit.

Returning to the roots of the doctrine, the point of allowing the testimony of witnesses, whose sole function is to corroborate the testimony of the victim that a complaint was made, is to act preemptively to rebut a jury's potential residual prejudice against the failure of a victim to complain promptly. *State* v. *Troupe*, supra, 237 Conn. 296. The constancy of accusation doctrine was originally meant, and has continued to serve, as a method of counterbalancing a supposed societal bias against late complaining assault victims: Practically speaking, it provided a means to verify complaints made between the time of the assault and the time of the official complaint.[17] Once the complaint has been for-

duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." (Internal quotation marks omitted.) *State* v. *Falcon*, 68 Conn. App. 884, 886, 793 A.2d 274, cert. denied, 260 Conn. 924, 797 A.2d 521 (2002). It is, nevertheless, patent that the victim did not testify that she complained of or related any incident to either teacher. Cf. *State* v. *Troupe*, supra, 237 Conn. 284.

[16] The incident was reported to the police on July 2, 1999. The victim's interaction with the teachers took place in the 1999-2000 school year, at least two months after the police report was filed.

[17] One commentator, representing the Women's Rights Litigation Clinic of Rutgers-Newark Law School, testifying before the New Jersey Supreme Court joint subcommittees regarding the fresh complaint rule in rape prosecutions on criminal practice and rules of evidence, suggested the following rationale: "[J]ust in presenting its case, the State will inevitably disclose when the complaint was made [to the police] in relation to the event complained of. The jury . . . will assume that that was her first complaint of any kind and, if it was delayed, will further assume that no rape occurred. Rather than allowing such an inference or giving the accused control over the decision whether to raise this issue . . . the state [should] be allowed to take the initiative by introducing evidence of her first complaint." (Internal quotation marks omitted.) R. Coombs, "Reforming New Jersey Evidence Law on Fresh Complaint of Rape," 25 Rutgers L.J. 699, 707 (1994); see also C. Tait, Connecti-

mally and officially lodged, the defense argues, any subsequent complaints cannot reasonably be the subject of an inquiry regarding their timeliness.[18]

We review that newly framed claim in light of the reasoning of *Troupe*. *Troupe* had the effect of narrowing the scope of the constancy of accusation doctrine as used in Connecticut. Most notably, it restricted the use of constancy testimony, allowing it for the sole purpose of corroborating the victim's testimony that a complaint had been made. Id., 304. The court also narrowed the reasoning behind the doctrine, rationalizing that it now serves only to counteract a lingering, false assumption. "[T]he scope of our current doctrine is broader than necessary to protect against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident." Id., 303. If the purpose of the doctrine is to combat stereotypes held by jurors regarding nonreporting victims, once a victim has offi-

---

cut Evidence (3d Ed. Sup. 2002) § 6.37.5, p. 17 ("constancy of accusation rule is fully satisfied by a victim's initial complaints").

Our Supreme Court in *Troupe* found itself in accord with the views of the Supreme Court of New Jersey; see *State* v. *Hill*, 121 N.J. 150, 578 A.2d 370 (1990); in balancing the competing interests at stake. *State* v. *Troupe*, supra, 237 Conn. 301–302. The bias against victims of rape should be weighed against the defendant's burden of refuting "supporting evidence, which . . . generally is not admissible in the trial of crimes other than sexual assault. Concerns about such evidence are magnified if the victim has reported the alleged offense to a number of persons, all of whom are permitted to testify about the details of the complaint." Id., 302–303.

[18] It has been contended that the probative value of a complaint had a terminable shelf life. "While the 'freshness' of the complaint remains a matter for the jury . . . at some point in time an accusation is so 'stale' that the rule should be deemed inapplicable as a matter of law." (Citation omitted.) C. Tait, Connecticut Evidence (3d Ed. 2001) § 6.37.3, p. 496. We believe that a complaint should have no shelf life and that the weight given to it should remain a matter for the jury. See *State* v. *Romero*, 59 Conn. App. 469, 475, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). In the present case, we only apply common sense to the rule's application in relation to the timing of the formal complaint.

cially reported the crime to the police, we do not believe any reasonable function can be further served by the admission of postcharge constancy testimony.

As the defense argues, once the formal complaint has been lodged, according to the doctrine's rationale, there should be no more constancy of accusation witnesses. Not only does the admission of that postofficial complaint constancy testimony *not* contribute to the rebuttal of any sexist bias, but it provides an unwarranted opportunity for the accumulation of redundant testimony prejudicial to the defendant. The defendant argues that the court improperly admitted the testimony of the two teachers because the alleged complaints that were made to them by the victim occurred after the official complaint was lodged and that the timing of such complaints places them outside the scope of permissible constancy of accusation testimony. We agree with the defendant.

At first glance, *State* v. *Romero*, 59 Conn. App. 469, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000), appears to control. We believe that it does not and that this case is distinguishable. The defendant in *Romero* claimed that the trial court improperly allowed the testimony of a constancy of accusation witness to whom the victim had made statements long after the crime and after the defendant had been charged with the offense. Id., 471. This court concluded that the timing of a complaint does not affect the admissibility of the evidence, but merely affects the weight to be given to that evidence. Id., 475. We remain true to that view. "The delay . . . in the victim's statements to [a friend] does not make [the friend's] testimony inadmissible, but rather, is a factor to be considered by the trier of fact." Id. The defendant in *Romero* did not make the claim, as does the defendant here, that the admission of postcharge constancy of accusation testimony itself

is contrary to the underlying doctrine, and the court's holding in *Romero* did not reach that question.[19]

We believe that the testimony of the teachers, as constancy of accusation witnesses, was admitted improperly. Both teachers, in turn, testified, substantially, that the victim had reported the incident(s) of sexual assault to them.[20]

## C

### The Constancy Witness Therapist

The last constancy of accusation witness to which the defendant objects was the victim's therapist.[21] The

---

[19] Moreover, the cases relied on by the court in *Romero* supported only the claim that a complaint does not lose its viability, for constancy purposes, by a break in the constancy chain or by lapse of time. See *State* v. *Parris*, 219 Conn. 283, 291, 592 A.2d 943 (1991); *State* v. *Brigandi*, 186 Conn. 521, 526–29, 442 A.2d 927 (1982).

[20] One teacher testified that she found the victim in the hall crying and that she approached her. The teacher testified in relevant part as follows:

"[The Witness]: Right. She . . . said that there was a scene in the movie that made her very uncomfortable and she had to leave. And she went into detail about what the scene was and made reference that it was very personal to her.

"[Prosecutor]: Okay. And did she say anything else to you at that time?

"[The Witness]: She told me what happened to her. Do—

"[Prosecutor]: Okay. Did she identify with whom it had happened?

"[The Witness]: She said a family friend."

The other teacher testified that he confronted the victim after she had left the classroom after watching a film in which two men kidnapped and raped a young girl.

"[Prosecutor]: And without going into any detail whatsoever, did she make any kind of a disclosure?

"[The Witness]: About why she was upset? Yes, she did.

"[Prosecutor]: Without any detail, what was the nature of the disclosure that she made?

"[The Witness]: She said that something similar—something similar happened to her that made her remember that. And she was upset because this person that did this to her was about to receive bail or about to get out or something like that."

[21] The state called the therapist as a constancy of accusation witness only, stating that "because [she] is a therapist and the majority of her information is privileged, she's strictly a constancy of accusation witness."

defendant argues, and timely objected at trial, that the testimony of the therapist was likewise inadmissible because any alleged report of the incident to the therapist would have come after the formal charge had been made.[22] The defendant argues, in the alternative, on appeal, that the victim never testified that she had reported the incident to the therapist.[23] Because that objection was not raised at trial, we do not reach the issue here.

For the same reasons discussed in part II B, we believe that the therapist's testimony also was admitted improperly. The therapist subsequently testified that the victim had told her that she was sexually abused by the defendant.

## D

Returning to the standard by which this court reviews evidentiary claims, we believe that the admission of the previously discussed testimony; see part II A, B and C; represents an abuse of discretion. We do not believe, however, that the defendant has shown that the admis-

[22] The incident was reported to the police on July 2, 1999. The victim was referred to the therapist for counseling in August, 1999.

[23] The victim testified in relevant part as follows about her communication with her therapist:

"[Prosecutor]: Thank you. Did you go to counseling?

"[The Witness]: Yes. I'm still in therapy now.

"[Prosecutor]: Where did you—where do you go?

"[The Witness]: The Institute of Living.

"[Prosecutor]: . . . Did you ever tell [your therapist] what happened with the defendant?

"[The Witness]: Yes."

That testimony is not, unassailably, legitimate constancy evidence because "what happened" is exactly what the victim needs to have reported to the witness so that the witness could give constancy of accusation testimony. In contrast to the victim's conversations with T and the two teachers, however, here, at least, she affirmatively testified that she had told the witness "what happened." We conclude that insofar as that inquiry goes, that testimony suffices to trigger the witness' availability as a constancy of accusation witness.

sion of any one constancy of accusation witness, alone, constitutes harmful error, given that seven constancy of accusation witnesses were presented, all of whom testified, improperly or not, to the same effect. Though that undoubtedly was prejudicial to the defendant, we do not believe that he has shown that the admission of the testimony of any individual witness rises to the level of substantial prejudice or injustice, the requisite standard for reversal on purely evidentiary claims of error.

The defendant makes the claim on appeal that the cumulative effect of all the improperly admitted constancy of accusation testimony rose to the level of a constitutional violation by depriving him of a fair trial. We agree. As that claim was not raised at trial, the defendant requests that we review the matter pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[24]

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

[24] The defendant additionally requests that we review the matter for plain error. See Practice Book § 60-5. Because we believe that it was the aggregation of evidentiary missteps that led to the deprivation of the defendant's right to a fair trial, we do not believe that plain error analysis is appropriate. Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Falcon*, 68 Conn. App. 884, 887, 793 A.2d 274 (judge's failure to recuse himself in trial after participating in pretrial plea negotiations was plain error), cert. denied, 260 Conn. 924, 797 A.2d 521 (2002).

We conclude that the record is adequate to review the claim of error. See part II A, B and C. The defendant raises constitutional claims under the fourteenth amendment to the United States constitution, as well as article first, § 8, of the constitution of Connecticut.[25] In particular, the defendant claims that the admission of the witnesses' testimony deprived him of a fair trial, and that his right to confront the witnesses against him and to subject them to a full and complete cross-examination was violated.

Although we do not believe that the defendant was deprived of his right to confront the witnesses against him,[26] we do believe that the improper admission of the

---

[25] "[I]t is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure. Thus all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States. *Whitney* v. *California*, 274 U.S. 357, 373 [47 S. Ct. 641, 71 L. Ed. 1095 (1927) (Brandeis, J., concurring)]." (Internal quotation marks omitted.) *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 846–47, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).

The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[26] In *Troupe*, the court acknowledged that the admission of constancy of accusation testimony does not violate the confrontation clause of the sixth amendment. *State* v. *Troupe*, supra, 237 Conn. 293. The reasoning is that the clause is not violated by admitting declarant's out-of-court statements "as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (Internal quotation marks omitted.) Id., 292. "Because constancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime"; id., 293; there is no constitutional violation. Id.

testimony of the four constancy of accusation witnesses nevertheless deprived him of a fair trial. The improper admission of the testimony of each constancy of accusation witness, we conclude, was harmless and did not, alone, create such substantial prejudice to the defendant as to warrant a reversal of the judgment. As noted previously, however, the testimony is part of a mosaic of improperly admitted evidence that, in the aggregate, served to deny the defendant a fair trial. "[T]he trial court as well as the court of review must insist that fairness in the trial and in the argument shall be observed. Otherwise justice cannot be done." (Internal quotation marks omitted.) *State* v. *Floyd*, 10 Conn. App. 361, 390, 523 A.2d 1323 (*Bieluch, J.*, dissenting), cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987).

---

The facts here are different from those in *Troupe*. Here, the issue is not whether the defense was allowed adequate cross-examination of the victim on the identity of the person(s) to whom she had reported the crime, but whether the defense was allowed to cross-examine the victim fully and effectively on the identity of witnesses who *later claimed* that she had reported the crime to them. Here, in contrast to *Troupe*, it would appear that three of the four constancy of accusation witnesses in question should not have testified at all, given that the victim had not identified them as people to whom she had reported the incident and, thus, their testimony, which contradicted the victim's own testimony, provided a crucial basis on which the defense would have reason to cross-examine the victim, but could not. Once those witnesses had testified, and the defense was on notice as to the nature of their statements, the defendant argues, the opportunity to cross-examine the victim had passed.

We are mindful that whenever hearsay is admitted and is safeguarded properly by the presence of the declarant, our courts, generally, have not found any constitutional violation. See *State* v. *Troupe*, supra, 237 Conn. 292–93; see also *California* v. *Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). In the instances in which we have found such a violation, it was because the court impermissibly restricted the defendant's lines of inquiry when cross-examining the declarant. See, e.g., *State* v. *Santiago*, 224 Conn. 325, 331–32, 618 A.2d 32 (1992). Here, the declarant was available, and no line of questioning was restricted. We therefore do not find that this situation satisfactorily implicates the defendant's constitutional right to confront his accuser. It does, however, implicate the defendant's right to a fair trial.

"It is well settled that a violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right. . . . Thus, [w]hatever might be said of [the state's] objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . The question is not whether the chilling effect is incidental rather than intentional; the question is whether that effect is unnecessary and therefore excessive." (Internal quotation marks omitted.) *State* v. *Alexander*, 50 Conn. App. 242, 249, 718 A.2d 66 (1998), rev'd in part on other grounds, 254 Conn. 290, 755 A.2d 868 (2000).

The right to a fair trial can be implicated in numerous ways.[27] "The concept of fairness embraces many concrete notions, ranging from such fundamental matters as the right of the defendant to know the charges against him, to such lesser interests as his right to have each count of the indictment charge him with no more than one criminal violation . . . or the right to have access to reports by informant witnesses to law enforcement officials . . . or the right to present information in mitigation of punishment before being sentenced after conviction . . . ." (Citations omitted.) *Daye* v. *Attorney General of State of New York*, 696 F.2d 186, 193 (2d Cir. 1982).

Prosecutorial misconduct is probably the most notable reason for the deprivation of a defendant's right to a fair trial. See *State* v. *Santiago*, 73 Conn. App. 205,

---

[27] "The defendant's right to a fair trial is implicated by the fourteenth amendment to the United States constitution and by article first, § 8, of the Connecticut constitution." *State* v. *Floyd*, supra, 10 Conn. App. 387 (*Bieluch J.*, dissenting).

807 A.2d 1048 (2002), cert. granted on other grounds, 262 Conn. 939, 815 A.2d 673 (2003); *State* v. *Alexander*, supra, 50 Conn. App. 242; *State* v. *Floyd*, supra, 10 Conn. App. 361. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." (Internal quotation marks omitted.) *State* v. *Floyd*, supra, 383 (*Bieluch J.*, dissenting). That misconduct can range from failure to provide exculpatory evidence to the defense; *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); to improper comments by the prosecutor made in closing arguments. *State* v. *Cassidy*, 236 Conn. 112, 115, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds, *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000). The right to a fair trial has, additionally, been found to have been abridged by improper jury instructions; *State* v. *Davis*, 261 Conn. 553, 562, 804 A.2d 781 (2002); and by failure to allow evidence of a victim's prior sexual abuse. *State* v. *Rolon*, 257 Conn. 156, 160, 777 A.2d 604 (2001).

The common thread in those situations is the prejudicial impact on the parties' due process rights, generally implicating the parties' right to be tried before an impartial fact finder. See *State* v. *Harvey*, 27 Conn. App. 171, 177, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). "The appearance and existence of impartiality are both essential elements of a fair trial." *State* v. *Santangelo*, 205 Conn. 578, 602, 534 A.2d 1175 (1987). Whether the claim of a denial of a fair trial is of constitutional dimension is guided by whether the claim rests on a factual matrix that is within the mainstream of due process adjudication. *Daye* v. *Attorney General of State of New York*, supra, 696 F.2d 193.

We cannot overlook the fact that the improper admission of the testimony of the multiple constancy wit-

nesses constituted a significant amount of prejudicial hearsay. Although any one of the hearsay statements, alone, would not have substantially prejudiced the defendant's right to a fair trial, the cumulative effect of the witnesses' testimony, we believe, escalated the harm to a constitutional level. The aggregation of missteps at trial has frequently led to such results. See *Floyd* v. *Meachum*, 907 F.2d 347 (2d Cir. 1990) (cumulative effect of prosecutor's comments denied defendant fundamentally fair trial); *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002); (cumulative effect of four instances of improper conduct by prosecutor deprived defendant of fair trial); *State* v. *Santiago*, supra, 73 Conn. App. 228–29 (numerous acts of misconduct so infected proceedings as to deprive defendant of fair trial). Again, the gauge of the constitutional violation is the overall fairness of the trial.

As a result, we find that the defendant has made a claim of constitutional magnitude alleging the violation of his fundamental right to a fair trial. Thus, the second prong of *Golding* has been satisfied. "The first two requirements [of *Golding*] involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999). We find that the third and fourth prongs of *Golding* are satisfied as well. For reasons we will discuss, we believe that the alleged constitutional violation clearly exists and that the state has not shown the error to be harmless beyond a reasonable doubt. In short, the improper admission of multiple constancy of accusation witnesses deprived the defendant of a fair trial before an impartial jury.

Here, the four of the seven constancy of accusation witnesses whose testimony improperly was admitted included a friend of the victim, the victim's therapist and two schoolteachers. Without the umbrage of the

constancy doctrine, their testimony is simple hearsay, the unreliability of which is manifest by a significant discrepancy in the testimony of the victim and three of the witnesses. Although the court in *Troupe* held that all other evidentiary rules remain in effect; *State* v. *Troupe*, supra, 237 Conn. 304; here, the state explicitly relied on the constancy of accusation doctrine for the admission of that testimony. The testimony in question was a significant part of the state's evidentiary presentation argued to the jury. The state relied prominently on the improperly admitted testimony of the victim's friend, T, in closing argument,[28] and referred to the therapist's and the teachers' testimony as well. The potential damage caused by the testimony of the teachers was increased by the fact that no constancy of accusation limiting instruction was given to the jury regarding their testimony.

Although it is established that if erroneously admitted evidence merely is cumulative of other evidence, that alone does not constitute reversible error; *Swenson* v. *Sawoska*, 215 Conn. 148, 155, 575 A.2d 206 (1990); it is clear that repeatedly allowing such testimony "leave[s] the jury with the impression that the State has gathered a greater number of witnesses than the defense . . . ." (Internal quotation marks omitted.) *State* v. *Troupe*, supra, 237 Conn. 320 (*Berdon, J.*, concurring). "Later multiple accusations . . . [can serve] no purpose but to 'pile on' statement upon statement to impress the jury that if repeated often enough it must be true." C. Tait, Connecticut Evidence (3d Ed. Sup. 2002) § 6.37.5, p. 17.

---

[28] In the closing argument rebuttal, the prosecutor stated in relevant part: "I would submit to you that it's a sophisticated expectation that a child of thirteen would be able to maintain what had happened . . . that she would indicate it was of a consensual. nature, tell friends back in February that she was having sex with this guy who she believed to be her boyfriend . . . she just happens to mention that she had sex with him and was going down whenever her grandmother [wasn't home] . . . ."

Given the weight and volume of the improperly admitted testimony and its relative importance to the state's case, we believe that the defendant's right to a fair trial before an impartial jury clearly and impermissibly was burdened, that the admission of the testimony of those four witnesses was substantially prejudicial to the defendant and that the state has not shown the cumulative effect of the improperly admitted testimony to be harmless beyond a reasonable doubt. To conclude otherwise would provide prosecutors and trial courts no governance on the admission of the testimony of constancy of accusation witnesses, thereby allowing the state to accumulate witnesses with impunity, a result pernicious to justice.

This case highlights the mischief that unfettered application of the constancy of accusation doctrine can generate. The doctrine is hanging by a thread, and the strand of reasoning opposed to it is not new.[29] We con-

---

[29] Objection to the reasoning of the doctrine came early. "We are told that the outrage is so great that there is a natural presumption that a virtuous woman would disclose it at the first suitable opportunity. I confess that I should think that this was about the last crime in which such a presumption could be made, and that it was far more likely that a man who had had his pocket picked or who had been the victim of an attempt to murder would speak of it, than that a sensitive woman would disclose such a horror." O. Holmes, "Law in Science and Science in Law," 12 Harv. L. Rev. 443, 453 (1899).

Holmes' comments may have proven prescient, as, increasingly, physicians and therapists have been called to testify as to the natural inclination of rape victims, especially young ones, to delay disclosure. See State v. Williams, 65 Conn. App. 449, 453, 783 A.2d 53 (physician testifying that "delayed disclosure of sexual abuse by child victims was so common that it constituted the norm rather than the exception"), cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001); see also State v. Rolon, supra, 257 Conn. 156; State v. Christiano, 29 Conn. App. 642, 617 A.2d 470 (1992), aff'd, 228 Conn. 456, 637 A.2d 382 (1994).

"Indisputably, one of the historic premises of the doctrine—that it is natural for the victim of a sexual assault to complain promptly following the assault—has been discredited substantially in contemporary times. The overwhelming body of current empirical studies, data, and other information establishes that it is not inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense,

clude, given the guidance of our Supreme Court in *Troupe* coupled with the surviving theory underlying the doctrine, that allowing the testimony of the four constancy of accusation witnesses would amount to an expansion of an already troubled body of law.[30] We do not so much constrict the doctrine as to construe it strictly.

The judgment is reversed and the case is remanded for a new trial.

In this opinion FLYNN, J., concurred.

DRANGINIS, J., dissenting. Although I agree with the majority that the defendant, Ralston E. Samuels, was not denied his constitutional right to confrontation, I otherwise respectfully dissent from the majority opinion.

---

that he or she was sexually assaulted." *People* v. *Brown*, 8 Cal. 4th 746, 758, 883 P.2d 949, 35 Cal. Rptr. 2d 407 (1994).

If a fresh complaint is, as experts are now testifying, the exception, rather than the norm, what benefit is left for maintaining the constancy of accusation doctrine? As one commentator asked: "Is the value of what is left of the rule for credibility purposes outweighed by the rule's potential to prejudice the accused, when further viewed in the context of the legal complexities and niceties it generates for trials and appeals?" C. Tait, supra, (3d Ed. Sup. 2002) § 6.37.2, p. 16.

[30] Contrary to the dissent's assertion, we believe that *State* v. *Kelly*, 256 Conn. 23, 770 A.2d 908 (2001), is not controlling authority for the issues in this case. In *Kelly*, the defendant did not complain that the individual testimony of any of the constancy witnesses was inadmissible. Rather, he complained that the state was permitted to "pile on" by offering cumulative testimony from eight constancy witnesses. While acknowledging that, to some extent, the constancy testimony was cumulative, the Supreme Court declined to adopt a rule prohibiting multiple constancy witnesses whose individual testimony fits the parameters set by *Troupe*. Unlike the situation in *Kelly*, in the present case, the defendant has argued, and we agree, that the individual testimony of four of the witnesses offered for constancy of accusation was, in each case, improperly admitted for differing reasons and that the prejudice caused by the aggregation of these evidentiary missteps denied the defendant a fair trial. In sum, contrary to my dissenting colleague's assertion, this appeal is not about the "piling on" of otherwise admissible testimony, but rather the prejudicial result of the aggregation of improperly admitted evidence. *Kelly* is inapposite.

This case is not about a violent sexual assault. It is about a "consensual" sexual relationship between a thirteen year old girl and a twenty-four year old man. Such crimes are commonly referred to as statutory rape, a situation in which the minor consents to the sexual act, but the consent is ineffective due to the minor's age and immaturity. See *United National Ins. Co.* v. *Waterfront New York Realty Corp.*, 994 F.2d 105, 109 (2d Cir. 1993). Here, the victim never *complained* to anyone about her sexual relationship with the defendant. In fact, outside of bragging to her cousins that the defendant was her boyfriend, the victim never told anyone voluntarily or wanted anyone to know about the relationship.[1] This is an instance in which the victim's family and the state had to intercede to protect the victim from a man who took advantage of her. After the victim was specifically questioned by her uncle, she admitted that she and the defendant had had sexual intercourse. When her mother learned of the fact, she sought medical care for the victim and was told to inform the police, which she did.

The majority cites the policy and history of the hue and cry, the fresh complaint rule and the constancy of accusation doctrine, as they apply to violent, nonconsensual sexual assault. In my opinion, that policy and

---

[1] The victim testified in relevant part as follows on direct examination by the prosecutor:

"[Prosecutor]: How did it come up that you told your uncle about what had happened?

"[The Witness]: He—my grandmother told him to ask me some questions because she—she thought that something was going on. So, my uncle asked me if anything was going on. And I told him.

"[Prosecutor]: Did you want to tell him?

"[The Witness]: No.

"[Prosecutor]: Were you planning on telling—

"[The Witness]: No.

"[Prosecutor]:—your family—

"[The Witness]: No.

"[Prosecutor]: —about what had happened?"

history are inapplicable in a case of statutory rape where there is "consensual" sexual intercourse between an adolescent who is younger than sixteen and an adult. In this case, the burden was on the state to prove the elements of General Statutes § 53a-71 (a) (1) beyond a reasonable doubt. That is, the state had to prove that the defendant was more than two years older than the victim, that the victim was thirteen but not older than sixteen, and that the two had engaged in sexual intercourse. In proving its case against the defendant, the state had to overcome the inconsistencies between the victim's written statement and her various oral statements, and to contend with the defendant's defense that the victim had fabricated the sexual assault claim in response to the controversy between the defendant and the victim's grandmother. This court has "held that [u]nder [*State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc)], the state is allowed to introduce any constancy of accusation testimony found necessary to associate the victim's complaint with the pending charges." (Internal quotation marks omitted.) *State* v. *Vumback*, 68 Conn. App. 313, 324, 791 A.2d 569, cert. granted on other grounds, 259 Conn. 933, 793 A.2d 1086 (2002), quoting *State* v. *Williams*, 65 Conn. App. 449, 464–65, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

I also take exception to the majority's position that the trial court improperly admitted evidence. Our case law is replete with teaching that appellate courts cannot discern the mood of the courtroom, the interaction between counsel and witnesses, and jury reaction from the cold, nonhuman pages of a transcript. See *Adams* v. *State*, 259 Conn. 831, 844, 792 A.2d 809 (2002); *Hill* v. *Hill*, 35 Conn. App. 160, 165, 644 A.2d 951 ("We were not there and the flavor of the court's remarks cannot be appreciated from reading the cold black and white lines of a transcript. The nuances of voice inflection,

gestures and body English are invisible on the pages of a printed transcript."), cert. denied, 231 Conn. 914, 648 A.2d 153, cert. denied, 513 U.S. 1059, 115 S. Ct. 669, 130 L. Ed. 2d 603 (1994). For those reasons, trial judges are afforded broad discretion with respect to the admission of evidence. See *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998) (" '[T]rial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' "); see also *State* v. *Young*, 56 Conn. App. 831, 840, 746 A.2d 795 (" 'trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant' "), cert. denied, 253 Conn. 904, 753 A.2d 939 (2000). Consequently, I am troubled by what I perceive as the majority's micromanaging the flow of evidence in the trial of this case.

Before I address the defendant's claims, I want to make clear the context in which the charges were brought against the defendant. The defendant was charged, in part, with four counts of sexual assault in violation of § 53a-71 (a) (1). Section 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

Statutory rape is a crime with a long history. See *State* v. *Sebastian*, 81 Conn. 1, 69 A. 1054 (1908). In *Sebastian*, the defendant was a music teacher convicted of carnally knowing and abusing one of his students, a fifteen year old girl. Id., 2. "While the offense of which the accused stood charged was not rape, it was a crime

essentially similar in character. It is not necessary to prove a want of consent on the part of the female; but this is simply because the law declares her incapable of consenting. Being thus incapable, there must always be a want of consent. Her tender years both render her peculiarly susceptible to the influence of others, and make it imperative that she should be protected against herself. Whether she yield to the solicitations of a seducer, or be the one to propose the guilty act, the law, therefore, declares to be immaterial." Id., 6–7.

The statutory rape law, now § 53a-71 (a) (1), has been amended by our legislature, as recently as 1993. The legislative history of that amendment is instructive and has been relied on by this court and our Supreme Court since its enactment. "The general purpose of § 53a-71 (a) (1) is to protect victims who are thirteen, fourteen or fifteen years of age, and thus may not have the full measure of maturity to make an intelligent choice regarding sexual intercourse, from being taken advantage of by someone who, because he or she is significantly older, may be able to persuade the victim to engage in physically consensual sexual intercourse." *State* v. *Jason B.*, 248 Conn. 543, 553–54, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). "There are many considerations that support the conclusion that the state has a compelling interest in restricting teenage sexual activity, some of which were mentioned by the legislators who approved the statute. The prevention of pregnancy, reduction of sexually transmitted diseases, and limitation of the opportunity of more sexually experienced persons to take advantage of those substantially younger are concerns of significant importance to society." *State* v. *Jason B.*, 47 Conn. App. 68, 80–81, 702 A.2d 895 (1997), aff'd, 248 Conn. 543, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999).

To demonstrate the manner in which this case falls within the ambit of the state's compelling interest in protecting the sexually vulnerable youth of our society, a fuller recitation of the facts reasonably found by the jury is required. The victim's grandmother owned a three-family residence, where she lived on the first floor. The defendant, a friend of the victim's uncle, rented the basement apartment beginning in December, 1997. The grandmother suffered extremely poor eyesight, and the defendant assisted her by providing transportation when she needed to shop. The defendant was treated as a member of the grandmother's family.

Due to her grandmother's poor vision, the victim went to live with her in September, 1998, to provide assistance. The victim was thirteen and the defendant was twenty-four at the time. The victim developed a romantic interest in the defendant and sent him letters. The victim and the defendant frequently spoke on the telephone. The defendant often visited the grandmother's apartment to visit with the victim. While he was there, at times, he gave hand signals to the victim for her to telephone him or for her to lift up her blouse.

On occasion, the defendant telephoned the victim, asking her to come to his apartment to get something. The defendant, however, never had anything for her to retrieve. Instead, he took the victim to his bedroom where he removed her clothing. The defendant then instructed the victim to lie on his bed.[2] The defendant leaned over the victim and inserted his penis into her vagina. The defendant withdrew and ejaculated onto the victim's thigh. The defendant then instructed the victim to go to the bathroom and clean herself. The defendant also instructed the victim not to tell her mother or grandmother about their sexual relationship.

---

[2] The victim lay at the foot of the bed with her feet on the floor.

Intercourse was sometimes painful for the victim. Once after she had had intercourse with the defendant, the victim noticed that she was bleeding. At one time, the victim was afraid that she was pregnant. The victim discussed her fear with the defendant, who told her that everything would be all right. He gave her two white pills that he had obtained from a clinic, and the victim got her menstrual period two days later.

The defendant first had sexual intercourse with the victim prior to Christmas, 1998. Initially, the victim reported that she had intercourse with the defendant four times during December, 1998, and January, 1999. At trial, the victim testified that she had sexual relations with the defendant ten to twenty times between December, 1998, and June, 1999. The two always had sexual intercourse on a Saturday morning in the defendant's apartment while the grandmother was out shopping. The victim previously had provided inconsistent statements as to whether the two always had intercourse in the defendant's apartment or whether they had intercourse there twice and twice in the grandmother's apartment. The victim and the defendant told one another that they liked one another. The victim thought the defendant cared for her.

On or about Valentine's Day, 1999, the victim told her second cousins, C and T, that the defendant and she were boyfriend and girlfriend. Until her uncle confronted her, the victim had no intention of telling any member of her family about her sexual relationship with the defendant.

By June, 1999, the defendant's relationship with the grandmother had deteriorated. The grandmother brought a small claims action against the defendant to recover moneys she had lent to him. The grandmother paid the utility bill and complained to the defendant about his failure to turn off lights and water. There

was an altercation between the grandmother and the defendant, and the victim consequently telephoned 911 for police assistance. Thereafter, the defendant was asked to move out of the basement apartment.

The day the defendant moved out of the apartment, Jane Ruiz, a former girlfriend of the defendant, approached the grandmother and told her to be careful because the victim had written letters to the defendant. The defendant had told Ruiz that in one letter, the victim wrote that she wanted him "to be her first . . . ." The grandmother asked the victim's uncle to talk to the victim about what was going on between her and the defendant. When the uncle asked her specific questions, the victim told him of the sexual relationship she had had with the defendant. After the uncle told the victim's mother and grandmother, the victim told her family and explained why she had not told them about the sexual relationship.

The victim's mother sought advice from her pediatrician, who advised her to take the victim to Saint Francis Hospital and Medical Center. The victim's mother reported the incident to the police on July 2, 1999. The victim spoke with a male police officer, Michael Kot, and, subsequently, a female detective, Naomi Cagianello, observed the victim give a video statement to Linda Murphy, a member of the diagnostic and investigative team at the Aetna Foundation Children's Center at Saint Francis Hospital and Medical Center. Thereafter, the victim discussed the sexual assault with a therapist at the Institute of Living, and two of her schoolteachers. At the request of her mother and grandmother, the victim prepared a written statement on July 28, 1999. In her written and video statements, the victim alleged that she had sexual relations with the defendant four times. The victim's various statements were inconsistent about where the sexual acts had occurred.

The victim was examined by Elaine Yorden, a physician board certified in pediatrics and adolescent medicine. Yorden's physical examination of the victim revealed that her hymen had been transected at the six o'clock position, which is consistent with sexual penetration. The victim also had a vaginal infection commonly seen in teenagers who are sexually active.

The defendant testified. He maintained that he had a family like relationship with the grandmother's family and thought of the victim as a niece. He denied that he had a sexual relationship with the victim; the jury clearly did not believe him.

I

I first address the claims on which the majority decided the defendant's appeal. In his brief, the defendant claims that the court improperly admitted hearsay testimony in violation of the rules of evidence, our case law and the state and federal constitutions. The defendant claims that the court improperly (1) admitted testimony from constancy of accusation witnesses whom the victim did not identify, in violation of *State* v. *Troupe*, supra, 237 Conn. 284, thus violating his right to confrontation, (2) permitted witnesses to testify, under the guise of constancy of accusation testimony, about statements concerning sexual assault, which the victim made to them after she had complained to the police,[3] (3) balanced the probative value of the testimony with its prejudice to him and (4) violated his right to a fair trial by admitting the testimony of too many constancy of accusation witnesses. The defendant had raised his constitutional claims pursuant to the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut,

---

[3] The defendant also claims that the court improperly instructed the jury with respect to constancy of accusation testimony because the court failed to include the teachers in the list of constancy of accusation witnesses.

and his constitutional right to confrontation pursuant to the sixth amendment to the United States constitution. I disagree with all aspects of the defendant's claims and with portions of the majority opinion.

At trial, the victim testified that she told the following individuals about her relationship with the defendant: her cousins, C and T, her uncle, her mother, her grandmother, Kot, Cagianello, Murphy, her therapist, Yorden, and one of her schoolteachers. Each of those individuals, except C, plus a second teacher testified at trial that the victim had told him or her about her sexual relationship with the defendant. On appeal, the defendant claims that the court should not have permitted her cousin, T, her therapist and the two teachers to testify as constancy witnesses.

The defendant claims that the court improperly admitted the testimony of T, the therapist and her two teachers as constancy of accusation testimony. The defendant relies exclusively on *State* v. *Troupe*, supra, 237 Conn. 284, for his claims.[4] I am of the opinion that the defendant, and the majority, have misapplied *Troupe*.

"[A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of

[4] With respect to each of his claims, the defendant asserts that they were preserved at trial and, to the extent that they were not, that he be afforded *Golding* review. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant objected to the constancy evidence at trial. I want to make clear, however, that claims concerning the admission of specific constancy of accusation testimony is evidentiary in nature and that *Golding* review does not apply because evidentiary claims are not constitutional in nature. *State* v. *Vumback*, supra, 68 Conn. App. 321.

the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." Id., 304–305. "Of course, *the rule that we adopt today does not affect those cases in which the details of a sexual assault complaint are otherwise admissible*, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication." (Emphasis added.) Id., 304 n.19.

Although I believe that the court properly admitted the challenged testimony under the constancy of accusation doctrine, the testimony also was admissible pursuant to other exceptions to the hearsay rule. "Although [our Supreme Court's] decision in *Troupe* restricted the constancy of accusation doctrine, [our Supreme Court] also held that *Troupe* 'does not affect those cases in which the details of a sexual assault complaint are otherwise admissible . . . .'" *State* v. *Kelly*, 256 Conn. 23, 40–41, 770 A.2d 908 (2001). Even if the court improperly admitted the evidence as constancy of accusation testimony, "[w]e can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

A

The defendant first claims that the court improperly admitted the testimony of T because the victim did not testify that she had told T that she and the defendant

had engaged in sexual intercourse.[5] The defendant argues that the victim testified that she had told T only that she and the defendant were boyfriend and girlfriend. When asked by the prosecutor whether she had told T that she and the defendant were having sex, the victim denied having said so, but admitted that she may have been mistaken about whether she told T more than she admitted. On cross-examination, the victim testified that she did not get into any details about the assault with T.[6] T, however, testified that the victim had told her that she was having sex with the defendant.[7]

---

[5] On direct examination by the prosecutor, the victim testified in relevant part as follows:

"[Prosecutor]: Did you tell anyone during the time that he was having sex with you? Did you tell anybody about him?

"[The Witness]: I told two people that—how he said that he considers me as his girlfriend.

"[Prosecutor]: Did you tell them anything else?

"[The Witness]: No.

"[Prosecutor]: Are you sure?

"[The Witness]: Yes.

"[Prosecutor]: Could you be mistaken?

"[The Witness]: I might be."

[6] The victim testified on cross-examination by defense counsel in relevant part as follows:

"[Defense Counsel]: Okay. Now, on direct examination you testified that you told two—are these classmates of yours about [the defendant]. Is that correct?

"[The Witness]: That I can remember.

"[Defense Counsel]: Who did you first tell about this incident?

"[The Witness]: The—I—are you talk—the only people I told was C and T.

"[Defense Counsel]: And you told them that you and he were boyfriend-girlfriend?

"[The Witness]: Yes.

"[Defense Counsel]: You didn't get into any details?

"[The Witness]: No."

[7] T testified in relevant part as follows in response to questions from the prosecutor:

"[Prosecutor]: Did [the victim] talk to you about anything about [the defendant] the night of the party?

"[The Witness]: Yes, she did.

"[Prosecutor]: What did she tell you?

"[The Witness]: She told me that [the defendant] was her boyfriend and that she had sex with him. And that was it.

The defendant's specific argument is that the victim's having told T that she was the defendant's girlfriend is not the same as reporting a sexual assault. The defendant overlooks his leading cross-examination about who the victim had told first about "this incident." See footnote 6. In response, the victim replied that she had told C and T, but that she did not get into details. We have no way of knowing what defense counsel or the victim meant by "incident" or "details," as there were no follow up questions. Furthermore, the defendant never asked the victim what being boyfriend and girlfriend meant to her.

T's testimony is quite consistent with the victim's testimony. T reported that the victim had said that she was the defendant's girlfriend and that they had had sex. "[T]hat was it." See footnote 7. Again, defense counsel did not pursue his cross-examination to ask T what it meant to be boyfriend and girlfriend. If there was ambiguity about the relationship between the victim and the defendant, defense counsel made no effort to clarify that ambiguity. There is nothing in our case law, as the majority notes, regarding the testimonial talisman of reporting a sexual assault. See *State* v. *Lisevick*, 65 Conn. App. 493, 508, 783 A.2d 73, cert. denied, 258 Conn. 933, 785 A.2d 230 (2001); *State* v. *Orhan*, 52 Conn. App. 231, 243, 726 A.2d 629 (1999). A jury, however, may draw reasonable inferences from the facts presented at trial. *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). In *State* v. *Dziob*, 133 Conn. 167, 170–71, 48 A.2d 377 (1946), the court stated that "[t]he state thereafter offered the testimony of the

"[Prosecutor]: Did she say when she would have sex with him?
"[The Witness]: No, she did not.
"[Prosecutor]: Did she say where she would have sex with him?
"[The Witness]: At his house.
"[Prosecutor]: And did she say when she would go down there?
"[The Witness]: When [the victim's grandmother] was not there."
Defense counsel did not cross-examine T.

mother of a talk with the daughter some months before she was taken to the doctor, but the defendant claims that this did not constitute an accusation of the crime. While the daughter did not expressly state to the mother that sexual intercourse had occurred, the conversation was such that the mother could reasonably infer that it had, as she evidently did. The fact that some months intervened between this conversation and the talk with the doctor would not necessarily require the trial court to conclude that there was not a constancy of accusation, particularly when considered in the light of testimony of other witnesses as to accusations made by the daughter to them."

Regardless of the ambiguity, T's testimony was admissible for purposes other than constancy of accusation. T's testimony was admitted properly under the prior consistent statement exception to the hearsay rule. See *State* v. *William C.*, 71 Conn. App. 47, 71, 801 A.2d 823, cert. granted on other grounds, 262 Conn. 907, 810 A.2d 277 (2002). "The general rule is that a party cannot strengthen the testimony of his own witness by showing that he made previous statements to the same effect as his testimony . . . ." Id. "If the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness, (2) a suggestion of bias, interest or improper motive that was not present at the time the witness made the prior consistent statement, or (3) a suggestion of recent contrivance, evidence of a prior consistent statement made by the witness is admissible, in the discretion of the court, to rebut the impeachment." Conn. Code Evid. § 6-11 (b).

Here, the court properly may have admitted T's testimony as a prior consistent statement for any of those three reasons. During his cross-examination of the victim, the defendant noted inconsistencies in her statements. He suggested that she had contrived the claim of sexual assault against him due to the conflict between

him and the grandmother. The legal difficulties between the grandmother and the defendant occurred subsequent to the victim's telling T of her relationship with the defendant. For those reasons, T's testimony also was admissible as a prior consistent statement.

## B

The defendant claims that the therapist's testimony was not admissible as constancy of accusation testimony because the victim disclosed to the therapist the defendant's sexual abuse subsequent to the time she had informed the police.[8] Although I do not think that *Troupe* or any case stands for the proposition that only complaints made prior to telling the authorities are permissible constancy of accusation testimony, the therapist's testimony[9] is admissible under the residual

---

[8] In response to the prosecutor's questions, the victim testified in relevant part as follows:

"[Prosecutor]: Did you go to counseling?

"[The Witness]: Yes. I'm still in therapy now.

"[Prosecutor]: Where did you—where did you go?

"[The Witness]: The Institute of Living.

"[Prosecutor]: . . . Did you ever tell [your therapist] about what had happened with the defendant?

"[The Witness]: Yes."

[9] On direct examination by the state, the therapist testified in relevant part as follows:

"[Prosecutor]: . . . Did [the victim] come to you for counseling in August of 1999?

"[The Witness]: That's—correct. Yes, she did.

"[Prosecutor]: During the course of that counseling, did she disclose to you an incident that had occurred?

"[The Witness]: Yes, she did.

"[Prosecutor]: What was the nature of the disclosure that she made to you, in very general terms?

"[The Witness]: That she was sexually abused.

"[Prosecutor]: Did she identify the person that had sexually abused her?

"[The Witness]: Yes, she did.

"[Prosecutor]: And who did she identify?

"[The Witness]: She identified [the defendant].

"[Prosecutor]: Did she indicate when the abuse had occurred?

"[The Witness]: In December of 1998 and January of 1999.

"[Prosecutor]: Did she indicate how many times it had occurred?

exception to the hearsay rule; Conn. Code Evid. § 8-9;[10] and under *State* v. *Kelly*, supra, 256 Conn. 45.

The victim testified that as a consequence of her sexual relationship with the defendant, she was receiving therapy. We do not know whether the therapist is a psychiatrist, psychologist or some other member of the mental health care profession. In *Kelly*, our Supreme Court held that a treating physician may testify as to the identity of the perpetrator and the details of a sexual assault as it is relevant "to facilitate the treatment of *psychological* and physical injuries." (Emphasis added; internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 45, quoting *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994).[11] Although *Kelly* and *DePastino* address the physician-patient exception to the hearsay rule, I see no reason not to permit any other qualified, mental health professional from testifying about allegations of sexual abuse made by a patient. "[I]n cases of sexual abuse . . . hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible." (Internal quotation marks omitted.) *State* v. *DePastino*, supra, 565.

For those reasons, the therapist's testimony was admissible.

## C

The defendant also claims that the court improperly admitted testimony from two of the victim's school-

---

"[The Witness]: As best I recall, I think she said four times."

The defendant did not cross-examine the therapist.

[10] Connecticut Code of Evidence § 8-9 provides: "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule."

[11] *Kelly* extended the *DePastino* rule of the admissibility of a physician's testimony from in-home child abuse to sexual abuse cases of adults. *State* v. *Kelly*, supra, 256 Conn. 45.

teachers as constancy of accusation witnesses and compounded the prejudice against him by failing to include their names in the list of constancy of accusation witnesses it read to the jury during its charge on constancy of accusation. I disagree.

During her testimony, the victim did not identify her teachers as individuals to whom she had reported the defendant's sexual abuse.[12] She testified in response to a question from the prosecutor, however, that she had a discussion with a teacher that led the teacher to believe that she had been sexually abused. One of the victim's teachers was teaching a civics class in which the students were watching a film concerning a girl who had been kidnapped and raped. The victim asked to leave the classroom. The other teacher saw the victim standing in the hall, crying. She approached the victim, who explained why she was not in class.[13] One week

---

[12] The victim testified in relevant part as follows on direct examination:

"[Prosecutor]: Did you ever tell anyone at school?

"[The Witness]: I didn't tell nobody at school. I just asked one of my teachers a question. So, I guess he considered it that I was talking about myself.

"[Prosecutor]: Oh, okay.

"[The Witness]: Because we were watching a movie that had to do with the same thing."

[13] One teacher testified in relevant part as follows on direct examination by the prosecutor:

"[Prosecutor]: During the course of the past year, was there a time when you saw [the victim] in the hallway outside of a history class?

"[The Witness]: Yes. She—do you want me to—

"[Prosecutor]: Yes, please.

"[The Witness]: Oh, okay. I was engaging in one of my classes, and I happened to—you know, if I see students walking in the hall, I'll go out and make sure they have their pass or, you know, what have you. And I happened to see her out in the hall. And she was crying. So, I went over to her, being one of my volleyball players also, and kind of engaged in a conversation with her to find out what was going on. And she happened to disclose to me—do you want me to go into what she—

"[Prosecutor]: Without going into the—too much detail about the nature.

"[The Witness]: Right. She had just come in, and she said that there was a scene in the movie that made her very uncomfortable and she had to leave. And she went into detail about what the scene was and made reference that it was very personal to her.

or so later, the victim told her civics teacher why she had asked to leave the class.[14] The testimony of both teachers was admissible to show the victim's state of mind at the time she was asked why she was crying and why she had left class. State of mind is an exception to the hearsay rule, referred to in our code of evidence as then existing mental condition. See Conn. Code Evid. § 8-3 (4).[15] "[A]n out-of court statement that is offered to

"[Prosecutor]: Okay. And did she say anything else to you at that time?

"[The Witness]: She told me what had happened to her. . . .

"[Prosecutor]: Okay. Did she identify with whom it had happened?

"[The Witness]: She said a family friend."

The defendant did not cross-examine that teacher.

[14] The civics teacher testified in relevant part as follows on direct examination by the prosecutor:

"[Prosecutor]: Was [the victim] a student of yours this past year?

"[The Witness]: Yes, she was. She was in my civics class the first semester, the first half of the year.

"[Prosecutor]: Was there a time during the course of the year that she made a disclosure to you?

"[The Witness]: . . . And in the beginning [of the civics class], we explain to the students what they're about to see. And not that they showed anything, but it was implied. And there was a little girl who was kidnapped and raped by two men.

"[Prosecutor]: Yes.

"[The Witness]: Okay. When she saw the scene, she got up and she said, you know, 'Can I leave?' I mean it was dark and she seemed upset. And I said, 'Yeah. Please step out in the hallway.' And she went out in the hallway. And I pursued her about a minute later just to make sure that class is all set. And [S] was out there talking to her already. So, she was all set. A week later she—you know, I went through the lobby and I spoke to her—

"[Prosecutor]: And without going into any detail whatsoever, did she make any kind of disclosure?

"[The Witness]: About why she was upset? Yes, she did.

"[Prosecutor]: Without any detail, what was the nature of the disclosure that she made?

"[The Witness]: She said that something similar—something similar happened to her that made her remember that. And she was upset because this person that did this to her was about to receive bail or about to get out or something like that."

The defendant did not cross-examine the civics teacher.

[15] Connecticut Code of Evidence § 8-3 (4) provides: A statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition

establish the truth of the matter asserted is inadmissible hearsay unless the statement falls within a recognized exception to the hearsay rule. . . . An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted. . . . Of course, for any such out-of court statement to be admissible, it must be relevant to an issue in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 137–38, 763 A.2d 1 (2000).

Here, the statements the victim made to her teachers were not offered to prove the truth of the matter asserted, but to explain to each of the teachers the reason for her distress.[16] For those reasons, the testimony of the teachers was not admitted improperly.

The testimony of the victim's teachers also was proper constancy of accusation testimony. "This court . . . has reviewed numerous trial court decisions in light of *Troupe*. In *State* v. *Orhan*, [supra, 52 Conn. App. 243], we held that [t]he controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. Our Supreme Court merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided." (Internal quotation marks omitted.) *State* v. *Vumback*, supra, 68 Conn. App. 323.

and is not a statement of memory or belief to prove the fact remembered or believed."

[16] Because the court properly admitted the teachers' testimony, I need not reach the defendant's claim of harm resulting from an allegedly improper jury instruction. The failure of the court to give a limiting instruction as to constancy of accusation testimony is not a matter of constitutional magnitude. *State* v. *Wild*, 43 Conn. App. 458, 467, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996).

D

Regardless of whether the challenged testimony was admitted under the constancy of accusation doctrine or another exception to the hearsay rule, I agree with the majority that the testimony of each of them alone does not rise to the level of substantial prejudice or injustice to the defendant. See *State* v. *Beliveau*, 237 Conn. 576, 592, 678 A.2d 924 (1996). I also conclude that the testimony of those individuals together did not substantially prejudice the defendant. If anything, the testimony was cumulative, but not harmfully so.

"Although the defendant frames the appellate issue as one of a constitutional violation, [the] ultimate conclusion turns on evidentiary grounds." *State* v. *Eagles*, 74 Conn. App. 332, 335, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003); see also footnote 4. "It is a fundamental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . The relevant inquiry is whether the claimed error of the trial court is likely to have affected the outcome of the trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 39.

Here, the victim herself testified that the defendant had abused her. Murphy testified in detail about her interview with the victim, and Yorden gave compelling testimony about the evidence of sexual abuse that she found during her physical examination of the victim, including a transected hymen and a sexually transmitted disease.

For all of those reasons, I conclude that the court did not abuse its discretion in admitting the testimonial evidence of T, the victim's therapist or her teachers.

## II

I now turn to the defendant's constitutional claims. The defendant claims that his federal constitutional right to confrontation was denied by the admission of the constancy of accusation testimony that was discussed in part I. The defendant also claims that the plethora of constancy of accusation testimony violated his right to a fair trial. I disagree with both of those claims.

### A

As previously discussed, I concur with the majority that the defendant's constitutional right to confrontation was not violated by the admission of constancy of accusation testimony.[17] "In Connecticut, it is well established that the constancy of accusation doctrine does not violate a defendant's sixth amendment right to confrontation. *State* v. *Romero*, 59 Conn. App. 469, 480, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). Our Supreme Court has ruled that this is a fundamental tenet of confrontation clause jurisprudence, namely, that the clause is not violated by admitting a declarant's out-of-court statements, *as long as the declarant is testifying as a witness and subject to full and effective cross-examination. . . . [State* v. *Troupe,* supra, 237 Conn. 292]." (Emphasis in original; internal quotation marks omitted.) *State* v. *Thompson,* 71 Conn. App. 8, 13, 799 A.2d 1126 (2002). "The defendant attempts to 'put a constitutional tag on a nonconstitutional evidentiary ruling.' " Id.

The victim, the state's first witness, identified everyone to whom she had told of her relationship with the defendant. The defendant had an opportunity to cross-examine the victim and each of the witnesses who testi-

---

[17] The defendant failed to brief his state constitutional claim, and that claim is deemed abandoned. See *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996).

fied that the victim had told them about her relationship with him. Although the defendant cross-examined the victim to some extent and cross-examined some of the witnesses, he failed to cross-examine other witnesses.[18] What is more, the defendant had the option of asking the court's permission to recall the victim during his case to elicit further testimony from her regarding her revelations to others regarding her relationship with him, which he did not do. See *State* v. *William C.*, supra, 71 Conn. App. 58.

"[T]he decision whether to cross-examine a witness is almost always a purely tactical one. . . . When a party chooses not to cross-examine a witness in order to avoid the possibility of eliciting harmful testimony, his right to confront and cross-examine that witness as guaranteed by the sixth and fourteenth amendments of the United States constitution is in no way abridged." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 642, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Abernathy*, 72 Conn. App. 831, 836, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

---

[18] My review of the trial transcript discloses that the defendant failed to cross-examine T, Officer Cagianello, the therapist or either of the two teachers.

Our appellate courts frequently have stated that a party "may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 670, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). A "defendant cannot now complain that he was deprived of his constitutional rights because his trial tactic failed." *State* v. *Fisher*, 52 Conn. App. 825, 830, 729 A.2d 229, cert. denied, 249 Conn. 912, 733 A.2d 232 (1999).

B

I now turn to the defendant's claim that the court deprived him of his right to a fair trial by (1) permitting three witnesses to testify about statements the victim had made after she reported the crime to the police and (2) improperly weighed the probative value of the testimony against its prejudicial effect on him. I do not agree.

The majority concluded, and I agree, that the testimony of the constancy of accusation witnesses individually did not harm the defendant. I part company with the majority, however, where it concludes that the cumulative effect of the constancy of accusation witnesses was harmful. Our Supreme Court repeatedly has "declined the invitation to create a new constitutional claim in which the totality of the alleged constitutional error is greater than the sum of its parts; *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); *State* v. *Robinson*, 227 Conn. 711, 746–47, 631 A.2d 288 (1993) . . . ." (Internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 146, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds, *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

"Because constancy of accusation testimony is evidentiary in nature, a trial court's admission of such testimony will be reversed on appeal only where there has been an abuse of discretion and a showing by the defendant that such abuse has caused him substantial prejudice or injustice." *State* v. *Vumback*, supra, 68 Conn. App. 321–22. "In a case involving an evidentiary ruling, it is the defendant's burden to show that it is more probable than not that the court's action affected the result." (Internal quotation marks omitted.) *State* v. *Faria*, 47 Conn. App. 159, 175, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

The defendant claims that the court improperly permitted the victim's therapist and two of her teachers to testify because the victim had discussed with them her relationship with the defendant after she reported it to the police. He also claims that because the witnesses were a therapist and two teachers, the jury was more likely to believe them. He also argues that permitting testimony from those witnesses constituted "piling on," which deprived him of a fair trial.

"In *Troupe*, our Supreme Court limited the common-law rule, holding that a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." (Internal quotation marks omitted.) *State* v. *Vumback*, supra, 68 Conn. App. 322. The defendant does not claim, and the record does not demon-

strate, that the testimony from the victim's therapist and the teachers failed to conform to the *Troupe* rule.

"[T]he complaint need not have been made promptly after the commission of the alleged offense; any delay in reporting [was] to be considered by the fact finder in evaluating the weight of the constancy of accusation testimony. . . . [W]hatever delay took place between the time of the attack and the time the victim first told witnesses of it does not affect the admissibility of the evidence, but merely presents a question of fact for the trier as to the weight to be given it . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Marshall*, 246 Conn. 799, 809, 717 A.2d 1224 (1998).

"Prior to our [Supreme Court's] decision in *Troupe*, in *State* v. *Parris*, 219 Conn. 283, 293–94, 592 A.2d 943 (1991), [our Supreme Court] held that the trial court properly admitted testimony of four constancy of accusation witnesses and that such testimony was not cumulative. While such evidence was overlapping in the sense that it related to the same incident, [it] pertained to a different statement that the victim made to a different person at a different point in time . . . [and demonstrated that the victim] previously had reported the incident . . . in a constant and consistent fashion. . . . The Appellate Court also has upheld trial court decisions to admit as many as eight constancy of accusation witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 38.

In *Kelly*, two sets of two witnesses, the victim's parents and the investigating police officers, were permitted to testify about the statements the victim had made to each set of witnesses. Our Supreme Court concluded that the *Kelly* defendant had failed to show that the testimony of both of the police officers and both of the victim's parents was likely to have affected the outcome of the trial. Id., 39. The testimony was corroborative

and merely cumulative, and was therefore harmless. Id., 39–40. The same conclusion applies to the testimony of the therapist and the teachers.

"[I]n determining whether to permit [constancy of accusation] testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Internal quotation marks omitted.) *State* v. *Vumback*, supra, 68 Conn. App. 323. "[T]he controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. Our Supreme Court merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided." (Internal quotation marks omitted.) Id.

For those reasons, I would not reverse the judgment on the grounds reached by the majority and would address the defendant's remaining claims.[19]

---

[19] On appeal, the defendant also claimed that the court improperly (1) replaced a member of the jury panel with the first alternate juror, rather than by replacing the juror by lot, in violation of General Statutes § 54-82h (c) and (2) permitted the state to file an amended long form information before the start of evidence. I will not address the defendant's other claims because my opinion is in the minority, and those claims are not likely to arise during a retrial, if any. See *State* v. *Norwood*, 47 Conn. App. 586, 590, 707 A.2d 31 (1998).